**UNITED STATES of America,
Plaintiff,**

v.

**$25,846.96 AND $6,000.00 SEIZED FROM BANK OF VERNON ACCOUNT NO. XXX–XX–6206, Defendant.**

No. 6:12–CV–1837–LSC.

United States District Court,
N.D. Alabama,
Jasper Division.

March 6, 2013.

Amanda Schlager Wick, Joyce White Vance, U.S. Attorney, Jennifer Smith Murnahan, U.S. Attorney's Office, Birmingham, AL, for Plaintiff.

## ORDER

L. SCOTT COOGLER, District Judge.

### I. Introduction

Before the Court is Claimant Randall Keith Colburn's ("Claimant") Motion to Dismiss and for Return of Seized Funds, filed on July 11, 2012. (Doc. 6.) Claimant's brief in support of the motion was contemporaneously filed. (Doc. 7.) Pursuant to this Court's Order (Doc. 9), Plaintiff the United States of America (the "Government") filed a responsive brief in opposition to the motion on August 13, 2012 (Doc. 10), and Claimant filed a reply brief in support of the motion on August 20, 2012. (Doc. 11.) The motion has been fully briefed and is ripe for decision. Upon due consideration after reviewing the parties' submissions, the Motion to Dismiss and for Return of Seized Funds is DENIED.

### II. Factual and Procedural Background

Between January 5, 2011, and October 24, 2011, one hundred fourteen cash withdrawals were conducted from the Bank of Vernon account number XXXXX6206 (the "Bank Account"), held in the name of Claimant or Besty Lee Colburn. These withdrawals occurred at regular intervals, usually between one and three days apart. The vast majority of the cash withdrawals were for exactly $9,000.00, but all one hundred fourteen were less than $10,000.01. Twenty-seven of the cash withdrawals were facilitated by receiving cash back from a deposit. The only time a withdrawal was made for a value not divisible by one thousand was when it was cash back from a deposit. The withdrawals generally followed a pattern: (1) A withdrawal was made by receiving cash back from a deposit in an amount not divisible by one thousand, (2) several withdrawals were made by check in an amount divisible by one thousand, usually $9,000.00, and (3) the process repeated. Although records indicate that Claimant owns a scrap metal business in Vernon, Alabama, the Alabama Secretary of State's website contains no record of a business registered by or to Claimant.

On December 6, 2011, agents of the Internal Revenue Service, Criminal Investigations ("IRS–CI") seized $25,846.96 and $6,000.00 (collectively, the "Defendant Funds") from the Bank Account. The seizure of the Defendant Funds was pursuant to 31 U.S.C. § 5317, as property involved in or traceable to a structuring offense in violation of 31 U.S.C. § 5324.

After the Government filed the Verified Complaint for Forfeiture In Rem on May 11, 2012 (Doc. 1), Claimant timely filed a verified claim June 21, 2012, contesting the forfeiture action in accordance with Supplemental Rule G(5)(a). (Doc. 5.) Claimant next filed the motion to dismiss at issue here.

### III. Standard

A claimant may move to dismiss a complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir.2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir.1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir.2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*[1] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.*

Notwithstanding the Rule 12(b)(6) standard, Supplemental Rule G(2) also governs the sufficiency of the complaint in civil forfeiture cases. Fed. Supp. R. G(8)(b)(ii).[2] Supplemental Rule G(2) requires a verified complaint stating the grounds for subject matter jurisdiction, *in rem* jurisdiction, and venue. Fed. Supp. R. G(2)(a) & (b). The complaint must also describe the property with reasonable particularity; if the property is tangible, allege its current location and its location when seizure occurred; and identify the statute enabling forfeiture. Fed. Supp. R. G(2)(c)-(e). Finally, the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. Supp. R. G(2)(f). "No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D); Fed. Supp. R. G(8)(b)(ii).

## IV. Discussion

In moving to dismiss the verified complaint, Claimant makes three arguments. First, he contends that the Defendant Funds are not forfeitable because they are not the property involved in the offense of

---

**1.** In *Bell Atlantic Corp. v. Twombly,* the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Bell Atl. Corp.*, 550 U.S. at 560–63, 127 S.Ct. 1955. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563, 127 S.Ct. 1955.

**2.** The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions apply, among others, to all *in rem* forfeiture actions brought pursuant to a federal statute. Fed. Supp. R. A(1)(b). Where the Supplemental Rules apply, the Federal Rules of Civil Procedure also apply, "except to the extent that they are inconsistent with" the Supplemental Rules. Fed. Supp. R. A(2).

structuring. Second, he contends that the seizure of $6,000.00 from the Bank Account was executed without a warrant and those funds should be returned. Third, he contends that the complaint does not allege sufficient facts for the Government to prove by a preponderance of the evidence that the Defendant Funds are forfeitable.

Federal law requires domestic financial institutions to file a currency transaction report ("CTR") for any cash transaction— or multiple cash transactions occurring during one business day—exceeding ten thousand dollars. 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311; 31 C.F.R. § 1010.313. Structuring is the act of conducting, or attempting to conduct, "one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements...." 31 C.F.R. § 1010.100(xx). Structuring, or attempting to structure, any transaction with a domestic financial institutions is prohibited. 31 U.S.C. § 5324(a)(3). "Any property involved in a violation of section 5313 ... or 5324 [of title 31, United States Code], and any property traceable to any such violation ... may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code." *Id.* § 5317(c)(2).

Section 981(a)(1)(A) of title 18, United States Code, applicable through section 5317· of title 31, United States Code, provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [section 5313 or 5324 of title 31, United States Code], or any property traceable to such property" is subject to forfeiture to the United States. Section 984(b) of title 18, United States Code, provides that "any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section." 18 U.S.C. § 984(b). This provision applies to any action for forfeiture brought by the Government in connection with any offense under section 5324 of title 31, United States Code. *Id.* § 984(a).

A. Forfeitability of the Defendant Funds

■ Claimant argues that—with structured withdrawals—the alleged structuring violation only involves the cash that is withdrawn from the Bank Account; thus, any funds remaining in the Bank Account, such as the Defendant Funds, are separate and distinct from any property involved in the offense of structuring and are not forfeitable under § 981. Furthermore, Claimant alleges that the Defendant Funds in the Bank Account are never found in the same account as the property involved in the offense of structuring, and are not forfeitable under § 984.

■ Assuming, *arguendo*, that funds remaining in an account after several structured withdrawals are not otherwise subject to forfeiture, this would not be dispositive of whether the Defendant Funds are forfeitable in this case. The Government is also alleging that Claimant continuously deposited funds into the Bank Account that were traceable under § 981 to the structurally withdrawn funds. Anything purchased with funds that are subject to forfeiture is also subject to forfeiture because it is traceable to those funds. *See United States v. $125,938.62,* 537 F.3d 1287, 1293 n. 2 (11th Cir.2008) (certificates of deposit subject to forfeiture when Government can demonstrate that the funds used to purchase them were derived from or were traceable to any proceeds obtained directly or indirectly from the viola-

tion triggering forfeiture). *See also United States v. $4,255,625.39,* 762 F.2d 895, 905 (11th Cir.1985) (in finding that funds obtained through narcotics transactions but then exchanged for pesos are still forfeitable as traceable proceeds of narcotics transactions, court noted that pesos would likewise be subject to forfeiture as traceable to the narcotics transactions).

According to the Government, the Defendant Funds were recycled in this manner: (1) Claimant would deposit a check from a scrap metal company into the Bank Account for an amount over the $10,000.01 reporting threshold; (2) at the same time, Claimant would withdraw a smaller amount of money in the form of cash back from the deposit in an amount always less than the $10,000.01 reporting threshold; (3) over the next several days, Claimant would withdraw cash from the Bank Account via check in an amount always less than the $10,000.01 reporting threshold; (4) Claimant would use the withdrawn cash to purchase scrap metal from the customers of his scrap metal business; (5) he would then sell the scrap metal to a company that paid him with a check; and (6) finally, Claimant would deposit this check into the Bank Account, and repeat the process.

Following this chain of events, it is easy to determine that the Defendant Funds are forfeitable. The cash taken out of the Bank Account is structured, which violates 31 U.S.C. § 5324, and is therefore forfeitable under 31 U.S.C. § 5317. The scrap metal purchased using this forfeitable cash is likewise subject to forfeiture because it was obtained in exchange for forfeitable cash. The checks from scrap metal companies are subject to forfeiture because they were obtained in exchange for the forfeitable scrap metal. Finally, the Defendant Funds are forfeitable because they are deposited into the Bank Account using the checks from scrap metal companies that are subject to forfeiture.

Claimant argues that there is no "traveling taint" applied to property exchanged for forfeitable property. (Doc. 11 at 4.) In support of this argument, he relies on *United States v. Certain Accounts, Together With All Monies Deposit Therein,* 795 F.Supp. 391 (S.D.Fla.1992) (hereinafter *"Certain Accounts"*). In that case, an individual was arrested with receipts for approximately one million dollars in money orders, and two overnight letter invoices allegedly used to ship the money orders for deposit into various bank accounts. These receipts and invoices were individually for amounts slightly below the reporting threshold, evidencing a structuring violation. The Government sought forfeiture of the entire balance of every account that the money orders were directly deposited into—the direct recipient accounts—and every account that checks were drawn and negotiated into from the direct recipient accounts—the indirect recipient accounts. The district court, on several motions to dismiss by various claimants, determined that the Government stated a claim against the direct recipient accounts, but failed to state a claim against the indirect recipient accounts. In reaching this decision, the court held that "the government must allege facts other than a mere tracing of checks written against a suspect account." *Id.* at 398.

The facts in this case are substantially different than the facts in *Certain Accounts.* In *Certain Accounts,* the Government was attempting to subject the entire balance of the indirect recipient accounts to forfeiture despite the fact that only a portion of the balance was deposited from tainted money; however, in this case, the entire amount deposited into the Bank Account is tainted. Additionally, while the court in *Certain Accounts* was concerned

that "unknowing and factually innocent account holders who have received an allegedly tainted deposit may be deprived of the use of the funds until such time as they can assert the innocent owner defense," there is no such concern here.

The chain of tainted property to get from the structured funds to the Defendant Funds always remains in the possession of Claimant: (1) cash is structurally withdrawn from the Bank Account, held in the name of Claimant, and becomes tainted in the possession of Claimant, (2) the tainted cash is traded for scrap metal, which becomes tainted in the possession of Claimant, (3) the tainted scrap metal is traded for a check negotiated to Claimant, which becomes tainted in the possession of Claimant, (4) the tainted check is then deposited into the Bank Account as the Defendant Funds, which are tainted as traceable proceeds of a structuring violation. In other words, there is no innocent owner to worry about. Indeed, the Government has alleged more than mere tracing in this case, and the Defendant Funds are not immune from forfeiture.

### B. Seizure of the $6,000.00

■ In his brief in support of the motion, Claimant notes that "[i]f the Government first seized $25,846.96 and then subsequently (if even later that same day) seized $6,000.00, then the seizure of the $6,000.00 is a warrantless seizure and must be returned without regard to whether the $25,846.96 seizure was proper." (Doc. 7 at 2 n.2.) Claimant does not offer any substantive argument or case law supporting this assertion until his reply brief, in which he relies on *United States v. Keszthelyi*, 308 F.3d 557 (6th Cir.2002). (Doc. 11 at 1.) The Sixth Circuit in *Keszthelyi* held that "a single search warrant may authorize more than one entry into the premises identified in the warrant, as long as the

second entry is a reasonable continuation of the original search." 308 F.3d at 568. This appears to be the law of the Eleventh Circuit as well. *See United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir.1993).

In *Gerber*, FBI agents searched the defendant's car on a Friday, but decided to wait until the following Monday to search the hood in order to acquire the assistance of an automobile mechanic so the car would not be damaged. The FBI agents found incriminating evidence under the hood, but unbeknownst to them, the search warrant had expired the previous Friday. The Eleventh Circuit found that the second search was a valid continuation of the first search because it was reasonable to wait for the assistance of an automobile mechanic and the FBI agents were unaware that the warrant had expired. Thus, the search was not warrantless.

In this case, the seizure of $6,000.00 was also a valid continuation of the original warrant: Upon executing the seizure warrant, the IRS–CI agents were informed that Claimant had deposits on his account that had not yet cleared. Once cleared, the Bank sent the remaining funds to the IRS–CI. It was entirely reasonable for the Government to wait and receive these funds separately because it would be impossible for the Government to seize the $6,000.00 at the same time they seized the $25,846.96 from the Bank Account. There was no second seizure of the $6,000.00 as Claimant contends. Rather, there was a single, continuous seizure of the Defendant Funds, and the $6,000.00 does not need to be returned to Claimant for lack of a warrant.

### C. Sufficiency of the Complaint

■ Claimant argues that the complaint does not allege sufficient facts for the Government to prove by a preponderance of the evidence that the Defendant Funds are

forfeitable. In support of this argument, he alleges that several of the withdrawals listed by the Government are not subject to a reporting requirement because they were in the form of checks, and the rest of the withdrawals did not occur at frequent enough intervals to constitute structuring. Additionally, Claimant alleges that these withdrawals were in the form of "cash-back" from a larger deposit that was subject to a reporting requirement, ensuring that the transaction was reported by the bank.

Federal law requires the filing of a CTR "[w]hen a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency," that involves more than ten thousand dollars. 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311. A check is "either a draft, other than a documentary draft, payable on demand and drawn on a bank, or a cashier's check or teller's check." 22 Williston on Contracts § 60:3 (4th ed. 2012). When a check is "cashed," it is endorsed by the payee and exchanged for cash. Thus, there is a transfer of United States currency, and cashing a check in which more than $10,000.00 is involved is subject to the CT R filing requirements.

The number of transactions that could be involved in a structuring offense encompasses the entire one hundred fourteen cash withdrawals, not twenty-eight cash-back withdrawals as Claimant argues. Furthermore, every single withdrawal was for an amount less than the $10.000.01 threshold for reporting, ordinarily for exactly $9,000.00, and occurred at a frequency greater than one withdrawal every three days. In light of this evidence, it would be reasonable to believe that the Government will be able to prove that, more likely than not, the property is traceable to a structuring violation and, consequently, subject to forfeiture.

V. Conclusion

For the above reasons, Claimant's Motion to Dismiss and for Return of Seized Funds is DENIED.