UNITED STATES of America, Plaintiff,

v.

THIRTEEN THOUSAND SEVEN HUN-
DRED AND FIFTEEN DOLLARS
($13,715.00) IN U.S. CURRENCY, De-
fendant.

Civ. No. 89–72309.

United States District Court,
E.D. Michigan, S.D.

April 30, 1990.

William J. Sauget, U.S. Attorney's Of-
fice, Detroit, Mich., for plaintiff.

Robert J. McCoy, McCoy and McDaniel,
Ann Arbor, Mich., for defendant.

MEMORANDUM OPINION
AND ORDER

ANNA DIGGS TAYLOR, District
Judge.

Agents of the United States Drug En-
forcement Administration (DEA) seized the

defendant Thirteen Thousand Seven Hundred and Fifteen ($13,715.00) following a police-citizen contact initiated by the agents at the Detroit Metropolitan Airport (Metro Airport). Subsequent to the seizure, a dog trained to detect such scents indicated that the money had been in contact with unlawful drugs. The government then brought this civil *in rem* forfeiture proceeding against the currency pursuant to 21 U.S.C. § 881(a)(6).[1] The Claimant, Andre Edwards, contests the government's showing of probable cause for the forfeiture and seeks dismissal of the complaint. The government seeks summary judgment based on the Claimant's lack of standing and the inherently incredible nature of his "innocent owner" status. The case is now before the Court on the parties' cross motions for summary judgment pursuant to Fed.R.Civ.P. 56.

This memorandum constitutes the findings of fact and conclusions of law upon which the Court bases its grant of summary judgment in favor of Plaintiff and its denial of Claimant's motion.

On November 14, 1988, DEA Special Agent Brian Haltom and other agents, while on surveillance at Metro Airport, observed Edwards seeking directions from a Northwest Airlines employee as to the location of the baggage claim area. The agents followed Edwards to the baggage claim area and observed him surveilling the area, apparently concerned that he might be followed. After examining several carrousels and asking for directions from another Northwest employee, Edwards was directed to the unclaimed baggage area. He emerged carrying a garment bag as well as the carry-on bag that he had already been carrying. At this point, the agents approached Edwards, stopped him, asked him to produce his ticket and some identification, and to answer a few questions. His ticket was for a one-way flight from Cleveland, Ohio, and paid in cash.

Edwards then volunteered that he was in possession of a large sum of money representing the proceeds of the recently concluded sale of his Plymouth Voyager van in Cleveland to one Rickey Dale, (now deceased). The agents requested that Edwards produce the money and he consented. The currency was in small denominations, in several tightly wrapped rolls secured by rubber bands. On the outside of each roll a number was written. Edwards then consented to have his person and his baggage searched for narcotics or narcotics related evidence. No contraband was found.

After further inquiry concerning Edwards' residence, employment status and the source of the funds, Agent Haltom informed him that the money would be detained so that a dog trained to detect narcotics could sniff the currency. According to Agent Haltom, Edwards was also told that he was not under arrest and that he was free to leave after receiving a receipt for the cash. Edwards chose to accompany the agents to their office in the airport to await examination of the money by the drug sniffing dog. Attempts to locate the dog handler, however, were unsuccessful. According to Agent Haltom, Edwards was then told that the money would be held overnight for examination by the dog in the morning and he was given a receipt. Although Edwards maintains that he was never informed of this reason for keeping the money, that fact is not material.

Agent Haltom testified that on November 15, 1988, the next day, a trained dog positively alerted to the presence of controlled substances on the money. Subsequent to this alert by the dog, the currency was converted into a cashier's check and deposited with the U.S. Marshal's office.

Initially, Edwards argues that the circumstances surrounding the contact between himself and the agents were insuffi-

---

1. 21 U.S.C. § 881(a)(6) states, in relevant part, (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   (6) All monies ... furnished or intended to be furnished by any person in exchange for a controlled substance ..., all proceeds traceable to such an exchange ..., and all monies used to facilitate any violation of this subchapter.

cient to support a determination of probable cause and that therefore the fruit of the search, i.e., the drug scent of the currency, must be excluded from consideration. The government, on the other hand, contends that when viewed in totality, all of the attendant circumstances support a showing of probable cause to conduct the examination of the currency upon which its seizure and the complaint for forfeiture are based.

In order to meet its burden, the government must demonstrate that there was "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980); *United States v. One 1975 Mercedes 280S*, 590 F.2d 196 (6th Cir.1978). The government must also "establish a nexus 'between the property to be forfeited and the criminal activity defined by the statute;' i.e., the exchange of a controlled substance." *U.S. v. $22,287.00, United States Currency*, 709 F.2d 442, 447 (6th Cir.1983), *citing, United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 323 (5th Cir.1981). Edwards argues that these showings have not been made in the instant case. The Court disagrees.

■ First, Edwards contends that the agents lacked the requisite reasonable suspicion to stop and question him. The undisputed facts, however, suggest otherwise. When Edwards was observed seeking directions to the baggage claim area, the agents believed that he had entered the airport from the outside with a baggage claim stub to retrieve baggage. While walking through the airport, Edwards' conduct suggested that he came to realize that he was being followed, and was concerned about that possibility. The bag apparently had not arrived on a recent flight, but was waiting unclaimed.

Consistent with the holding in *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), this circuit has applied a "totality of the circumstances" review to contact between law enforcement officials and citizens in an airport setting. Based on the foregoing, the Court finds that the agents did have reasonable suspicion to initiate a police-citizen contact with Edwards. Edwards appeared to be nervous, manifested by his repeated glances from side to side and over his shoulder as he walked through the airport. It appeared that he had not just arrived on a flight, but rather had entered the airport from the outside for the sole apparent purpose of picking up baggage which also was not newly arrived. Although this assumption was later proven incorrect when Edwards furnished his ticket for a recent flight, it does not negate the agents' reasonable suspicion at the time the contact was made.

■ Next, Edwards argues that there was insufficient probable cause to confiscate the currency. The agents sought and received consent to ask Edwards questions regarding his travel. Inspection of his ticket revealed that it was a one-way ticket from Cleveland and that it had been purchased with cash. When asked about his residency, Edwards responded that he lived in Cleveland. His identification, however, indicated that he was a Detroit resident. Further, Edwards volunteered to the agents the fact that he was carrying a large sum of money, approximately $13,000.00. Based on the circumstances attending this police-citizen contact; those being Edwards' suspicious behavior, the consensual nature of the discussion, the contradiction regarding his residence, the purchase of a one-way ticket in cash, the possession of a large amount of cash wrapped in rubber bands from a putative vehicle sale, and the positive alert of the drug-detecting canine, the Court finds that probable cause did exist to warrant seizure of the cash and institution of forfeiture proceedings.

■ After establishment on the undisputed facts that probable cause did exist, the burden shifts to the Claimant to show by a preponderance of the evidence that the property was not subject to forfeiture. *United States v. $22,287.00, United States Currency*, 709 F.2d 442, 446 (6th Cir.1983). The Court now turns to Edwards' claim that the money represents the legitimate

proceeds of the sale of his van to Rickey Dale.

 The government maintains that the alleged sale was a sham. The Court agrees. The undisputed evidence shows that despite Edwards' claim that the van was sold, he has in actually maintained possession and title to that vehicle. His contention that his purpose for returning to Detroit (despite the claim of Cleveland residence) was to obtain the title to the van establishes that no sale in fact was completed.

The government argues that Edwards' invocation of "innocent owner" status is inherently incredible. Edwards relies upon the "innocent owner" exception provided under 21 U.S.C. § 881(a)(6) which states that:

"... No property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

Edwards claims to have sold a van with a value of $8,000.00 for $13,000.00. Moreover, he contends that he had saved the $8,000.00 with which he originally purchased the van from his earnings. Records indicate, however, that during the years here relevant (1982 through 1987), Edwards either never earned enough to file federal, state or city income tax returns or chose not to report the sources of his income. Under all the circumstances, Edwards has failed to raise any serious question of innocent ownership.

 Edwards also advances a constitutional due process argument. Essentially, he claims that because the cash was converted into a cashiers' check and not subjected to scientific testing, he has been denied due process under the Fourteenth Amendment of the Constitution. This argument, however, is disingenuous as Edwards later concedes in his brief that "[t]his argument does not assume that expert scientific testimony is a necessary part of the government's proof; what is required is that a witness—lay or expert—es-

tablish the identity of the substance as part of the nexus of an alleged narcotics transaction as required by the statute." (citations omitted). This function was served by the drug sniffing dog and the testimony of the agent. It is axiomatic that if there is no right, there can be no violation.

Now, therefore,

IT IS ORDERED that Plaintiff's motion for summary judgment be and hereby is GRANTED.

IT IS FURTHER ORDERED that Claimant's motion for summary judgment be and hereby is DENIED.

IT IS SO ORDERED.