**UNITED STATES of America,
Plaintiff,**

v.

**FIFTY SEVEN THOUSAND, FOUR HUNDRED AND FORTY–THREE DOLLARS ($57,443.00), Defendant.**

No. 97–1602–Civ–LENARD.

United States District Court,
S.D. Florida.

Jan. 24, 1999.

AUSA Gerardo M. Sims, United States Attorney's Office for the Southern District of Florida, Miami, Florida, for plaintiff.

Peter S. Herrick, Miami, Florida, for defendant.

### *ORDER*

TURNOFF, United States Magistrate Judge.

This matter comes before the Court on the United States's Motion for Summary Judgment (DE 15) and Claimant Luz Neyla–Dunlap's Motion to Dismiss (DE 17). For the reasons stated below, this Court will deny the government's Motion for Summary Judgment (DE 15), deny in part and grant in part the Claimant's Motion to Dismiss (DE 17), and enter a finding of probable cause in favor of the United States pursuant to Federal Rule of Civil Procedure 56(d).

#### *Procedural Background*

On May 20, 1997, the United States of America filed a Verified Complaint for civil forfeiture *in rem* against fifty-seven thou-

sand four hundred and forty-three dollars in United States currency. (DE 1). The Verified Complaint alleges that the defendant currency is subject to forfeiture pursuant to three federal statutes: (1) 31 U.S.C. § 5317, which subjects to forfeiture any monetary instrument transported across the borders of the United States without filing a required report; (2) 18 U.S.C. § 981(a)(1)(A), which subjects to forfeiture any monetary instrument used in money laundering activity (as that activity is defined in 18 U.S.C. § 1956); and (3) 21 U.S.C. § 881(a)(6), which subjects to forfeiture any monetary instrument representing the proceeds of illegal narcotics activity (as that activity is defined in 21 U.S.C. § 801 *et seq.*).

On July 2, 1997, Luz Neyla–Dunlap filed a Verified Claim, Answer, and Counterclaim. (DE 8, 9).[1] On April 2, 1998, pursuant to 28 U.S.C. § 636(c), all parties consented to proceed before a United States magistrate judge. (DE 11). By Order dated April 8, 1998, this matter was referred to the undersigned for all further proceedings. (DE 12).

On August 24, 1998, the United States moved for summary judgment, or, in the alternative, for partial summary judgment on the issue of probable cause. (DE 15). On September 14, 1998, Claimant Neyla–Dunlap filed a Motion to Dismiss pursuant to Rule E(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims, as well as an Opposition to the government's Motion for Summary Judgment. (DE 17). On October 15, 1998, this Court held a hearing on the pending motions.

#### *Factual Background*

Prior to June 26, 1995 and as part of an ongoing narcotics and money laundering investigation, U.S. Customs agents learned that a known money launderer intended to deliver a large amount of U.S. currency to Adrianna Martinez. (DE 21 at 9–11).[2] On

---

1. Ms. Neyla–Dunlap has recently consented to the dismissal of her counterclaim. (DE 25 at 1). This Court, therefore, now dismisses that counterclaim pursuant to Federal Rule of Civil Procedure 41(b).

2. Prior to June 26, 1995, law enforcement officers had seized a vehicle registered to Luis Salgado, together with approximately $247,000 in U.S. currency. (DE 21 at 5–7). The

June 26, 1995, Customs agents observed that individual meet with Ms. Martinez in a car parked at Miami–Dade Community College ("Miami–Dade"). (DE 18 at 41). Customs agents then followed Ms. Martinez and placed her under investigation for possible money laundering activity. (DE 15 at 4). Customs agents also staked out her home. (DE 18 at 6–11; DE 21 at 10). On June 27, 1995, the agents followed Ms. Martinez to work at Pardo International Freight Forwarders ("Pardo"). (DE 18 at 10–11).

After a period of surveillance, Customs agents entered Pardo, identified themselves to Ms. Martinez, and requested permission to search the premises. (DE 21 at 12–13). Pursuant to Ms. Martinez's written consent, agents searched the premises with the aid of a dog trained to detect the trace odor of illegal narcotics. (DE 1 at 2; DE 21 at 17–18). The agents discovered approximately nine thousand dollars in U.S. currency in a desk drawer in Ms. Martinez's office after the dog alerted to the money. (DE 1 at 3; DE 21 at 19–20). According to Martinez, earlier that morning she had brought the money from her home—an apartment shared with her mother and two brothers. (DE 21 at 22). Ms. Martinez told agents that she had received the money as part of her freight forwarding business, but was unable to produce any receipts at the time. (DE 21 at 22).

Ms. Martinez's mother—Claimant Neyla–Dunlap—then arrived on the scene while federal officers were still present. (DE 1 at 2; DE 21 at 20). After identifying herself, Ms. Neyla–Dunlap stated that she was not employed by Pardo, but instead worked for a party-planning company. (DE 1 at 3). In response to questions, Ms. Neyla–Dunlap claimed that she did not have any large amounts of money, either on her person or at her home. (DE

1 at 3; DE 21 at 27). Ms. Neyla–Dunlap then stated that she had to leave to go to work and left the premises. (DE 1 at 3; DE 21 at 27).

As noted above, Customs agents had previously placed Ms. Neyla–Dunlap's apartment under surveillance, and, therefore, observed her enter that apartment shortly after leaving Pardo. (DE 18 at 6–7 & 12). Ms. Neyla–Dunlap emerged a few minutes later carrying a medium-sized box. (DE 18 at 14). She placed the box in her car and drove off. (DE 18 at 14–16). Customs agents then initiated a traffic stop, during which they asked for and received Ms. Neyla–Dunlap's consent to search her car. (DE 1 at 3–4; DE 18 at 28).

Agents discovered approximately fifty-five thousand dollars in U.S. Currency in the box, as well as two thousand additional dollars in Ms. Neyla–Dunlap's purse. (DE 1 at 3–4). The currency was bundled and sealed in air-tight freezer bags, most of it in denominations of ten dollars or less. (DE 1 at 3–4; DE 18 at 40). The agents did not find any narcotics in the vehicle or any evidence of other illegal activity. (DE 18 at 42).

Upon questioning, Ms. Neyla–Dunlap admitted that she had arranged for Ms. Martinez to pick up the money the previous day at Miami–Dade in response to a telephone call from an unidentified female. (DE 19 at 15). Ms. Martinez arranged to meet the woman at the Miami–Dade Registrar's Office. (DE 20 at 16). Ms. Martinez then accompanied the woman back to a car and received a bag which she did not open. (DE 20 at 16). Ms. Martinez placed the bag in her own car and drove home. (DE 20 at 16). Ms. Martinez did not ask for or receive a receipt or count the money—either at the parking lot or

money was later forfeited as property involved in illegal narcotics and money laundering activities. (DE 1 at 2; DE 21 at 6). On September 6, 1995, Salgado was arrested—this time in possession of approximately twenty (20) kilograms of cocaine. (DE 1 at 2; DE 21 at 6–7). Although Salgado has since become a fugitive from justice, a confidential informant in the *Salgado* case identified the individual who later delivered the defendant currency to Ms. Martinez. (DE 1 at 2; DE 21 at 8–9).

when she returned to her apartment. (DE 19 at 17; DE 20 at 16).

Ms. Neyla–Dunlap now alleges that the currency is hers and originated in Colombia, South America, from the sale of real property. (DE 8). A search of records maintained by the Department of the Treasury, however, did not produce any reports of international transactions in currency or monetary instruments filed by or on behalf of Luz Neyla–Dunlap at any time during the last ten years. (DE 15 at 5). In response, Ms. Neyla–Dunlap has produced documentation allegedly related to a sale of real property in Colombia. (DE 15 at 8). She also proffers both her own and her daughter's deposition testimony that the money was the result of a "currency-swap" arrangement. (DE 19; DE 20).

In particular, Ms. Neyla–Dunlap alleges that she placed the money from the sale of her Colombian property into a friend's bank account in Colombia, until such time as it was withdrawn and provided to a Colombian "money-broker"—Jaime Salsado. (DE 19 at 9–14). Mr. Salsado then arranged for Ms. Neyla–Dunlap to receive an equivalent amount of U.S. currency in the United States by having Ms. Martinez go to the parking lot of Miami–Dade and pick up the money. (DE 20 at 16). Neither Ms. Martinez nor Ms. Neyla–Dunlap received any paperwork to document this "currency swap." (DE 19 at 17; DE 20 at 16).

## I. PRELIMINARY CONSIDERATIONS

Claimant Neyla–Dunlap raises two preliminary objections to the government's Motion for Summary Judgment. According to Ms. Neyla–Dunlap, the government: (1) unreasonably stopped and searched her vehicle in violation of the Fourth Amendment; and (2) unreasonably delayed in bringing the present action. (DE 17 at 7–

8; DE 9 at 3). This Court, however, finds both arguments unpersuasive.

## A. Fourth Amendment

█ The Fourth Amendment attaches in all forfeiture proceedings. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Indeed, if a given search or seizure violates the Fourth Amendment, a court must generally suppress the resulting evidence pursuant to the Exclusionary Rule. *Id.*

█ Law enforcement agents may stop and search a vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband or other evidence of illegal activity. *Carroll v. United States*, 267 U.S. 132, 153–56, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Young*, 38 F.3d 338, 340 (7th Cir.1994).[3] Indeed, if officers have probable cause, a vehicle search may be "as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'" *United States v. Ross*, 456 U.S. 798, 800, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (citation omitted). Law enforcement officers have probable cause to search a vehicle if, under the totality of the circumstances, "including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

█ Considering the totality of the circumstances, this Court agrees with the government that its stop and search of Claimant's vehicle did not violate the Fourth Amendment. Customs agents had been conducting surveillance on Claimant's home since at least June 26, 1995. On that date, Ms. Martinez picked up a bag which Customs agents understood contained a

**3.** Warrantless vehicle searches may be reasonable without a separate showing of exigent circumstances because of a vehicle's movable nature. *Ross*, 456 U.S. at 805–06, 102 S.Ct. 2157. An individual's expectation of privacy does not survive where the law enforcement officers have probable cause to believe a vehicle contains contraband. *United States v. Johns*, 469 U.S. 478, 483, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

large sum of money representing the proceeds of illegal narcotics activities. Indeed, the agents had been informed that the person delivering the currency to Ms. Martinez was a known money-launderer. Agents then followed Ms. Martinez and watched her take the money to the apartment she shares with Claimant Neyla–Dunlap.

Armed with this knowledge, Customs agents followed Ms. Martinez to work the next day and initiated a consent search of the premises, discovering approximately $9,000 in narcotics-tainted money that Martinez claims came from Claimant's apartment. Ms. Neyla–Dunlap then appeared, claiming that she had no money at her home—a claim Customs agents knew to be false from their surveillance of the day before. The fact that Claimant then rushed home, retrieved a box, and drove off with it—after stating to the agents that she was on her way to work and had nothing to hide—supports the agents' decision to stop Claimant's automobile. As a result, this Court finds that the agents' stop and search of Claimant's vehicle was supported by probable cause and, therefore, did not violate the Fourth Amendment.[4]

## B. Timeliness of the Present Action

■ For her second general objection to summary judgment, Claimant Neyla–Dunlap argues that the present action is untimely. The defendant currency was seized on June 27, 1995 and the present action filed on May 20, 1997—a delay of approximately 23 months. Although this represents a substantial delay, the Court finds Ms. Neyla–Dunlap's arguments on the issue unpersuasive.[5]

21 U.S.C. § 881(b) requires the attorney general to commence forfeiture proceedings promptly after seizure. Similarly, 19 U.S.C. § 1604 requires every United States Attorney to inquire immediately into the facts of cases reported to him by Customs officials, and, when a forfeiture action is to be filed, to do so without delay. Indeed, in *United States v. Eight Thousand Eight Hundred and Fifty Dollars (8,850) in U.S. Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), the Supreme Court held that all federal forfeitures are subject to the Fifth Amendment's due process requirement allowing potential claimants the opportunity for a post-seizure hearing on forfeitability "at a meaningful time." 461 U.S. at 564, 103 S.Ct. 2005. The Supreme Court went on to establish a balancing test used to determine whether a given delay in instituting forfeiture proceedings is reasonable. *Eight Thousand Eight Hundred and Fifty Dollars (8,850) in U.S. Currency*, 461 U.S. at 556, 103 S.Ct. 2005. Among the factors the Court cited are: (1) the length of and reason for the delay; (2) whether the claimant promptly and diligently asserted a right to the seized property; and (3) whether the delay has resulted in any prejudice to the claimant. *Id.* at 565–69, 103 S.Ct. 2005. Here, the facts simply do not support Claimant Neyla–Dunlap's arguments of unreasonable delay.

First, by Claimant's own admission, the delay in bringing this action arose primari-

---

**4.** Although Customs agents also obtained Ms. Neyla–Dunlap's consent to search her vehicle, that consent was unnecessary in fight of the probable cause they possessed. *United States v. Navarro*, 90 F.3d 1245, 1253 (7th Cir.1996) (holding that because "officers had probable cause to stop the vehicle and search for the contraband, it was not necessary for them to have the consent of the owner of the vehicle"). Further, such consent would have been insufficient to justify the agents' stop of the vehicle retroactively.

Ms. Neyla–Dunlap, for her part, argues that her consent to the search was involuntary

because there were so many armed agents, she was alone, and the agents lied to obtain her consent by claiming the vehicle had been stolen. Although the Fourth and Fourteenth Amendments require that any consent to search be voluntarily, this Court need not reach the issue given that the agents' stop and search of Ms. Neyla–Dunlap's car was supported by probable cause.

**5.** While not dispositive of the issue, 19 U.S.C. § 1621 (1997) establishes a five year statute of limitations for forfeiture actions *in rem.*

ly because of a parallel administrative proceeding in which she participated. (DE 17 at 6). As noted above, the seizure occurred on June 27, 1995. Ms. Neyla–Dunlap filed a petition for administrative review with U.S. Customs on August 10, 1995.[6] *Id.* Customs reviewed that petition and denied it on February 2, 1995. (DE 17 at 6).

Significantly, Ms. Neyla–Dunlap filed a second petition with Customs on March 5, 1996. *Id.* While that second petition was still pending, Ms. Neyla–Dunlap nonetheless filed two requests for the case to be referred to the U.S. Attorney—on May 24, 1996 and again on August 2, 1996. (DE 17 at 6). Ms. Neyla–Dunlap also lodged a parallel administrative request for waiver of the $5,000 cost bond required by 19 C.F.R. § 162.47(b) (1997). *Id.*

The Court notes that Ms. Neyla–Dunlap may herself be largely responsible for the government's delay in bringing these proceedings. 19 C.F.R. § 162.47(d) requires Customs to refer any seizure to the U.S. Attorney for forfeiture proceedings "[w]hen the claim and bond, if required, are filed within the 20–day period" after notice. Here, it seems that Ms. Neyla–Dunlap failed to file either a request or a bond within the required 20–day period. Indeed, Ms. Neyla–Dunlap failed even to request a bond waiver pursuant to 19 C.F.R. § 162.47(e) until May 24, 1996— almost a year after receiving notice of her petition rights. (DE 17 at 6). Such administrative delays remain insufficient to render a forfeiture action untimely. *See*

e.g., *Nnadi v. Richter,* 976 F.2d 682, 688 (11th Cir.1992) (holding that the government is not responsible for delay in forfeiture proceedings when the claimant fails to make timely filings).

The second and third factors also militate against Ms. Neyla–Dunlap's arguments of unreasonable delay. While Claimant eventually asked Customs to refer this matter to the U.S. Attorney, she did so after significant delay and then without fully complying with the relevant regulations. Further, and perhaps most significantly, Ms. Neyla–Dunlap fails to point to any prejudice she has suffered as a result of the government's delay in bringing this action. *United States v. Bissell,* 866 F.2d 1343, 1352–53 (11th Cir.), *cert. denied sub nom. Caraballo–Sandoval v. United States,* 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989) (holding that courts should consider whether any delay in bringing a forfeiture action "hampered the claimant's defense on the merits"). As a result, this Court finds the government's delay in bringing this action reasonable and insufficient to warrant dismissal.

## II. MOTION FOR SUMMARY JUDGMENT

■ This Court next addresses the government's Motion for Summary Judgment. As noted above, the United States moves for summary judgment on each of the three counts of its Verified Complaint. In the alternative, the government asks this Court to enter partial summary judgment on the issue of probable cause.[7]

**6.** The Court notes that the timeliness of Ms. Neyla–Dunlap's administrative petition may itself be at issue. 19 C.F.R. § 162.47(a) (1997) requires a potential claimant to initiate administrative proceedings no later than 20 days after notice of the seized property is served pursuant to 19 C.F.R. § 162.45 (1997). Here, Ms. Neyla–Dunlap admits that she received notice of her petition rights on July 15, 1995, but did not file a petition until August 10, 1995. (DE 17 at 6).

**7.** The Court notes that it may not enter summary judgment on a portion of a claim—such as the issue of probable cause (which is an

element of each of the government's three causes of action). *See, e.g., Warner v. United States,* 698 F.Supp. 877, 878–79 (S.D.Fla. 1988) (noting that "a party may not make an independent Rule 56(d) motion" for a finding of fact on an issue that does not dispose of an entire cause of action); *see also* Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* § 2737 (3d ed.1998); *see also Capitol Records, Inc. v. Progress Record Distributing, Inc.,* 106 F.R.D. 25, 28 (N.D.Ill.1985) (holding that a party may not move for partial summary judgment "on less than a single claim"). For example, even if this Court were to agree with the

## Legal Standard

In general, summary judgment is appropriate only where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This Court must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub., Co.,* 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. *Hairston,* 9 F.3d at 919.

### A. Count I—Failure to Declare Imported Currency

■ For summary judgment, a plaintiff must show there is no genuine issue of material fact concerning each of the elements of the cause of action at issue. *See Lowe v. Aldridge,* 958 F.2d 1565, 1569 (11th Cir.1992); *see also Thomas v. Heatherton Staff Leasing,* 1995 WL 646247, 1995 U.S. Dist. LEXIS 16220, at * 14, n. 3 (N.D.Ill. Nov. 2, 1995) (holding that a court may not grant a "plaintiff summary judgment if a genuine issue of material fact exists as to an essential element of his claim"). The United States argues that there is no genuine issue of fact about whether the defendant currency was brought into the country in violation of 31 U.S.C. § 5317 (1997). This Court, however, disagrees.

Section 5317 of Title 31 of the U.S.Code provides that:

> If a report required under section 5316 with respect to any monetary instrument is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property ... traceable to such instrument may be seized and forfeited to the United States.

Section 5316(a)(1)(B), in turn, provides that a person must file a currency declaration form when knowingly transporting monetary instruments in excess of $10,000 "to a place in the United States from or through a place outside the United States." As a preliminary matter, therefore, the government must prove that the defendant currency was: (1) knowingly; (2) transported into the United States; (3) in the form of a monetary instrument; and (4) in excess of $10,000. Setting aside the other elements of its cause of action, the government has adduced absolutely no evidence that the money was transported into the United States in the form of a monetary instrument.

Claimant Neyla–Dunlap alleges that she received the defendant currency as the result of a "currency swapping" arrangement. (DE 17 at 5). In other words, she delivered Colombian pesos (allegedly representing proceeds from the sale of real property) to an individual in Colombia (DE 17 at 2–3). That individual then arranged to pay Ms. Neyla–Dunlap an equivalent amount in U.S. dollars from currency he had located in the United States. (DE 17 at 3).

Such currency swapping arrangements are certainly not unknown. *See, e.g., Banca Commerciale Italiana v. Northern Trust Int'l Banking Corp.,* 160 F.3d 90, 91–92 (2d Cir.1998) (describing how, in an

government and enter a finding of probable cause, that finding would not result in an appealable "judgment" within the meaning of Rule 56.

Nevertheless, in considering motions for summary judgment, Fed.R.Civ.P. 56(d) au-

thorizes courts to make findings of fact. This Court, therefore, will consider the government's request for a finding of probable cause in the context of Rule 56(d).

international currency swap, parties exchange the payment of funds in one country for the delivery of funds in another); *United States v. BCCI Holdings (Lux.), S.A.*, 833 F.Supp. 22, 24 (D.D.C.1993) (same). Further, in an international currency swap, no monetary instruments actually enter or leave the United States. *Id.*

Absent any evidence suggesting that the defendant currency in this case actually entered the United States from Colombia, this Court must deny the government's Motion for Summary Judgment as to Count I. For the same reasons, the government's request for a finding of probable cause is equally unavailing.

The Eleventh Circuit has defined probable cause in forfeiture cases as "a reasonable ground for a belief of guilt supported by less than prima facie proof but more than mere suspicion." *United States v. A Single Family Residence*, 803 F.2d 625, 628 (11th Cir.1986); *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980).[8] Based on the government's complete inability to suggest how, where, when, or through whom the defendant currency may have entered the country, this Court finds the government's allegations concerning Count I to rise only to the level of mere suspicion. This Court, therefore, declines to make a finding of probable cause pursuant to Rule 56(d) as to Count I.

### B. Count II—Use of Currency in Money Laundering Activities

■ The government next argues that there is no genuine issue of fact about whether the defendant currency was used in money laundering activities in violation of 18 U.S.C. § 981(a)(1)(A), as that offense is defined in 18 U.S.C. § 1956. (DE 1 at 6). Section 1956 defines money laundering in part to include any financial transaction involving illegal proceeds and knowingly used to promote or conceal "the manufacture, importation, sale, or distribution of a controlled substance." *See* 18 U.S.C. §§ 1956(a)(1)(A)(I), 1956(a)(1)(B)(I), 1956(c)(7)(B)(I). While there is record evidence to support the government's allegations, a genuine issue of material fact prevents this Court from entering summary judgment.

The record reveals basically two theories of what happened. The government contends that Ms. Neyla–Dunlap's transaction[9] with the unknown female at Miami–Dade was designed to promote or conceal the proceeds of illegal narcotics activities. (DE 15 at 7–9). In support, the government points to: (1) the surreptitious nature of the meeting; (2) the small denominations involved; (3) the airtight packaging of the money; (4) the fact that a dog alerted to the trace presence of illegal narcotics on money from Ms. Neyla–Dunlap's apartment; (5) the fact that Ms. Neyla–Dunlap originally lied to police when she claimed not to have any large amounts of cash at her home; and (6) the fact that Ms. Neyla–Dunlap immediately went home to move the money after being questioned by federal agents. (DE 15 at 7).

Ms. Neyla–Dunlap counters that the defendant currency represents proceeds from the sale of certain real property she owned in Colombia. (DE 17 at 2). In support, Ms. Neyla–Dunlap points to a document from Colombia memorializing the sale as well as to her deposition testimony in which she identified the "money broker" through whom she arranged the alleged currency swap. (DE 15 at 8; DE 19 at 14).

Based on the record evidence presented to date, this Court cannot conclusively de-

---

8. The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

9. The parties agree that although it was Ms. Martinez who actually picked up the currency, it is Ms. Neyla–Dunlap who is the real party in interest. The parties further agree that Ms. Neyla–Dunlap conducted a financial transaction with the defendant currency.

termine as a matter of law that the government is entitled to summary judgment. To be sure, a party opposing summary judgment "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995). Ms. Neyla–Dunlap, however, has at least created a triable issue by producing documentary and testimonial evidence in support of her defense. This Court, therefore, must deny the government's Motion for Summary Judgment as to Count II.

Denial of the government's Motion as to Count II, however, does not end the inquiry. In a forfeiture action under Section 981, the government initially bears the burden of proof—a burden which then shifts to the claimant if the government demonstrates probable cause. 18 U.S.C. § 981(d) (1997); 19 U.S.C. § 1615 (1997); *see also United States v. Certain Accounts*, 795 F.Supp. 391, 395 (S.D.Fla. 1992). Further, in demonstrating probable cause, the government may rely on "otherwise inadmissible hearsay evidence." *United States v. 1012 Germantown Rd.*, 963 F.2d 1496, 1501 (11th Cir.1992).

■ Here, the totality of the circumstances [10] establishes an inference of probable cause. *See, e.g., United States v. 141,770.00 in United States Currency*, 157 F.3d 600, 602–04 (8th Cir.1998) (holding that cash stored in zip-lock storage bags may show probable cause that the money was derived from illegal drug transactions); *United States v. Dickerson*, 873 F.2d 1181, 1184 (9th Cir.1988) (holding that a positive canine alert may show probable cause that the money was derived from illegal drug transactions); *United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1236 (9th Cir.1988) (holding that possession of a large amount of cash

"is strong evidence that the money was furnished or intended to be furnished in return for drugs" and may be used to show probable cause in support of forfeiture); *United States v. $250,000 in United States Currency*, 808 F.2d 895, 898 (1st Cir.1987) (holding that $40,000 in cash maintained in small denominations may show probable cause that the money was derived from illegal drug transactions); *United States v. Thirteen Thousand Seven Hundred & Fifteen Dollars in U.S. Currency*, 736 F.Supp. 135, 137 (E.D.Mich.1990) (holding that the fact that a claimant lied to federal officers during the seizure of cash may show probable cause that the money was derived from illegal drug transactions); *United States v. One 1984 Nissan 300ZX*, 1990 WL 112130, 1990 U.S. Dist. LEXIS 10198, at *10 (E.D.Pa. Aug. 6, 1990) (holding that a claimant's hurried attempt to conceal a large amount of cash in response to the presence of federal agents may show probable cause that the money was derived from illegal drug transactions). Pursuant to Rule 56(d), therefore, this Court finds probable cause in support of Count II of Plaintiff's Complaint.

**C. Count III—Currency as Proceeds of Illegal Narcotics Activities**

For its third argument in favor of forfeiture, the government contends that there is no genuine issue of fact about whether the defendant currency represents the proceeds of illegal narcotics activities in violation of 21 U.S.C. § 881(a)(6). In support, the government offers essentially the same arguments it advances in support of Count II. For the same reasons, however, this Court must deny the government's Motion. While the government's allegations support an inference of probable cause, Ms. Neyla–Dunlap offers at a least a plausible alternative explanation concerning how she obtained the defendant currency. This Court, therefore, denies

10. As the Eleventh Circuit has held, "It is well established, both in the law of forfeiture and in other areas of the law, that the probable cause inquiry is a flexible one in which the

court must consider the totality of the circumstances." *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1506 (11th Cir. 1993) (citations omitted).

the Plaintiff's Motion for Summary Judgment and, pursuant to Rule 56(d), finds probable cause in support of Count III of the government's Complaint.

## III. CLAIMANT'S MOTION TO DISMISS

■ Claimant Neyla–Dunlap's Motion to Dismiss argues that the United States has failed to file a verified complaint with the particularity required by Rule E(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims. (DE 17 at 8). For the purposes of a motion to dismiss, the material allegations of a complaint must be accepted as true. *Franklin v. Meredith,* 386 F.2d 958, 959 (10th Cir. 1967). Indeed, a complaint should not be dismissed with prejudice unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering whether to dismiss a forfeiture complaint, courts construe the pleadings liberally, and if there is any possibility of relief on the allegations of the complaint the case should not be dismissed. *See, e.g., United States v. $31,000 in United States Currency,* 740 F.Supp. 803, 804 (D.N.M.1990).

■ Supplemental Rule E(2)(a) departs from the notice pleading normally required by the Federal Rules,[11] instead requiring that the government allege all "circumstances from which the claim arises with ... particularity." *See, e.g., United States v. Real Property Located at 2323 Charms Road,* 946 F.2d 437, 441 (6th Cir. 1991). This "requirement is not merely a procedural technicality, but a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim." *United States v. Pole No. 3172,* 852 F.2d 636, 638 (1st Cir.1988). As distinct from notice pleading, Rule E(2)'s particularity requirement is "de-

signed to assure that the forfeiture complaint apprises potential claimants of the circumstances which support the government's contention that there is probable cause to believe that the defendant property was connected with illegal [activity], thus enabling claimants to commence an investigation of the facts and to frame a responsive pleading." *United States v. One Parcel of Real Property,* 921 F.2d 370, 375 (1st Cir.1990) (citations and internal quotations omitted). Rule E(2)(a), therefore, does not require the government, at the pleading stage, to meet its ultimate trial burden of showing probable cause; rather, the government's complaint must establish only a reasonable belief that the government can show probable cause for forfeiture at trial. *One Parcel of Real Property,* 921 F.2d at 376.

■ Here, Counts II and III of the government's complaint easily satisfy the particularity required by Rule E(2). The government describes the surveillance at Pardo International, the agents' interviews with Ms. Martinez and Ms. Neyla–Dunlap, as well as the surveillance at the Claimant's house leading up to the stop and search of her vehicle. (DE 1 at 2–5). In addition, the Complaint offers a precise breakdown of the amount and denominations of the defendant currency, as well as a description of Ms. Martinez's meeting at Miami–Dade the day before the seizure. (DE 1 at 4–5). Given that this Court has already found that such facts support an inference of probable cause, it follows that Counts II and III of the government's Complaint contain the particularity necessary to "allow a claimant to commence an investigation of the facts and to frame a responsive pleading." Supplemental Rule E(2). Accordingly, Claimant Neyla–Dunlap's Motion to Dismiss is denied with respect to Counts II and III.

---

11. The Federal Rules of Civil Procedure generally do apply to civil forfeiture actions, but the Supplemental Rules take precedence where the two are inconsistent. *See* Fed.

R.Civ.P. A; *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1216 (10th Cir.1986).

Count I of the government's Complaint, however, requires a different result. Count I alleges a failure to declare imported currency. (DE 1 at 5–6). While relying on essentially the same allegations as Counts II and III, the government fails to allege, let alone describe, any circumstances suggesting that the defendant currency was ever transported into the United States. Claimant's Motion to Dismiss Count I, therefore, is well-taken. *$31,000 in United States Currency,* 740 F.Supp. at 805 (granting a motion to dismiss pursuant to Rule E(2) because of the government's failure to specify circumstances central to its allegations, including the "date or location of" the illegal act, the "dollar amount" involved, and the alleged "participant[s]"). Accordingly, Claimant Neyla–Dunlap's Motion to Dismiss Count I is granted without prejudice.

### Conclusion

Accordingly, it is hereby ORDERED and ADJUDGED that Plaintiff's Motion for Summary Judgment (DE 15) is DENIED, Claimant's Motion to Dismiss (DE 17) is GRANTED IN PART AND DENIED IN PART, Count I of Plaintiff's Complaint (DE 1) is DISMISSED WITHOUT PREJUDICE, Claimant's Counterclaim (DE 9) is DISMISSED WITHOUT PREJUDICE, and this Court finds probable cause to support Counts II and III of Plaintiff's Complaint (DE 1).

ORDERED AND ADJUDGED.