**UNITED STATES of America,**

**v.**

**42.5 ACRES, MORE OR LESS, OF LAND AND PERSONAL PROPERTY, LOCATED IN the FIRST PROPERTY JUDICIAL DISTRICT OF HARRISON COUNTY, MISSISSIPPI, Described as Follows:**

**Parcel No. 1:**

**Part of the W½ of the SW¼ of the NW¼ of Section 34, Township 7 South, Range 13 West, Harrison County, Mississippi, more particularly described by metes and bounds as follows:**

**Begin for Survey at an iron pipe located on the Section Line, said point of beginning being S 00° 26′ W and 1396.0 ft. S of the NW corner of Section 34; thence S 89° 42′ E for 300.0 ft. to an iron pin on the West Line of "Lake Drive"; thence S 00° 26′ W for 528.0 ft. to an iron pin; thence N 89° 42′ W for 300.0 ft. to an iron pin on the Section Line; thence N 00° 26′ E for a distance of 528.0 ft. along the Section Line to an iron pin and point of beginning, containing 3.64 acres, more or less.**

**Parcel No. 2:**

**A parcel of land in the E ½ of the NE ¼ of Section 33, Township 7 South, Range 13 West, Harrison County, Mississippi, more particularly described as follows:**

**Commence at the NE corner of Section 33, T7S, R13W, Harrison County, Mississippi, and run in a southerly direction along the east line of Section 33 a distance of 486.7 feet to the intersection of the South margin of County Railroad ROW, a fence post, the point of beginning; run thence S 33 degrees 27′17″ W along the RR ROW 1866.3 feet to a fence post; run thence S 56 degrees 32′43″ E along the RR ROW 50 feet to a fence post; run thence along the arc of a curve in the RR ROW 764.0 feet (chord length: 750.0 feet, S 18 degrees 12′18″ W) to a concrete marker (the SW corner of**

the E½ of the NW¼, Section 33); run thence N 87 degrees 02'54" E 1328.8 feet to a concrete marker (the SE corner of the E½ of the NW¼, Section 33); run thence N 2 degrees 42'37" W 2231.2 feet to a fence post, the point of beginning. This parcel contains 38.9 acres, more or less, and is a part of the E½ of the NE¼ of Section 33, T7S, R13W, Harrison County, Mississippi.

Together with all and singular, the rights, privileges, improvements and appurtenances to the same belonging or in any wise appertaining; and, also

All improvements, buildings, structures, appurtenances, all contents of said improvements, buildings, structures, and appurtenances, together with any and all fixtures, furnishings, goods, wares, appliances, jewelry, gold, silver, currency, cash, artifacts, implements, machinery, equipment, lumber, livestock and property of every description, both real and personal, located on said 42.5 Acre tract, Defendant Property.

Civ. A. No. 1:90cv79GR.

United States District Court,
S.D. Mississippi, S.D.

Oct. 8, 1992.

Donald Waits, for plaintiff.

### MEMORANDUM OPINION

GEX, District Judge.

This matter came on for hearing on motion of the United States of America (Government) for a default judgment of forfeiture, for a judgment of forfeiture on the merits and for summary judgment. Based upon the entire Court record in this matter and an evidentiary hearing conducted September 29, 1992, this Court finds and adjudicates as follows:

The motion, the hearing conducted this date and, consequently, this judgment necessarily fall into three phases—the default judgment phase, the judgment on the merits phase and the summary judgment phase. The findings, general and for each phase, are as follows:

### GENERAL FINDINGS

At all times pertinent to this action, record title to parcel no. 1 was vested in Charles E. Wahl (Wahl) and Susan Ladner (Susan), as joint tenants (per deed dated December 31,

1982); and record title to parcel no. 2 was vested in Charles E. Wahl and Susan A. Wahl as joint tenants (per deed dated March 26, 1987). Charles E. Wahl· is the same person as Charles Eugene Wahl, deceased; Susan A. Wahl is the same person as Susan Ladner and Susan Ladner Wahl. Wahl and Susan are the persons who are actors in this matter.

The acts that give rise to this forfeiture action occurred during the year 1987 [1]; defendant property was seized in this action on February 10, 1990; and Wahl died from self-inflicted wounds on February 17, 1990. Wahl and Susan were still married but were estranged at the time of Wahl's death. They had been separated and had not cohabited since July, 1987. Wahl apparently died intestate; and, in addition to Susan, there are only three others, all infants, who have any expectation of being his heirs. An infant, Rondi Eugene Wahl (Rondi), born September 5, 1979, was the natural child of Wahl and the adoptive child of Susan. After Wahl's death Rondi has resided with the paternal grandparents, Elton Lambert (Lambert) and Verta Lee Lambert; and they were appointed his legal guardians by the Chancery Court of Harrison County, Mississippi, on August 20, 1990.[2] Two other infants—April Nicole Wahl (April), born February 3, 1989, and Jeremy Craig Leon Wahl (Jeremy), born February 2, 1990—are natural children of Susan but are not offspring or otherwise heirs of Wahl. At all times pertinent to this action, they have resided with their natural mother, Susan Ladner Wahl.

Under direction from the Court, due notice of this proceeding was mailed to and received by all interested persons as follows:

Susan received such notice for herself and on behalf her children, April and Jeremy on September 16, 1992.

Lambert and Verta Lee Lambert received such notice on behalf Rondi on September 16, 1992.

1. A summary of those facts appears hereinafter in the judgment on the merits part of this memorandum opinion.

2. The United States Attorney, on information provided in answers to interrogatories by Susan Ladner Wahl, had incorrectly represented that

Further, before proceeding herein the courtroom deputy ascertained that neither Susan, April, Jeremy, nor anyone representing them were present in the Courtroom or in the halls. Accordingly, this matter proceeded without their presence. The United States Attorney did announce, however, that Lambert, one of the guardians, and his step-daughter, Ann Wahl Benz (Benz), were present on behalf Rondi.

Before proceeding further, those persons stated, generally, for the record that they were not here to contest this forfeiture but only to make sure that it was proper. Further, they acknowledged the receipt of the original notice documents after this action first commenced in March, 1990, and the notice of this hearing; that they knew defendant property had been used as a "stash" house and, upon the advice of an attorney, felt that Rondi had no interest in the property. Responding to a statement that their attorney also told them that if Rondi had any interest in defendant property it would descend to him automatically, the Court explained that this proceeding was to terminate whatever interest Rondi had; and that after this hearing, depending on the Court's ruling, Rondi would not be able to come in, even after reaching majority, and claim this property. Both persons indicated that they understood and agreed that the matter proceed toward default judgment, judgment on the merits and/or summary judgment.

### THE NECESSITY OF A GUARDIAN FOR THE INFANTS

Looming ever present in this action is the necessity of the appointment by this Court of some type of a personal representative to protect the interests of the three infants named above. So significant is this problem that the United States Attorney on two occasions has requested that such a representative be appointed; and twice, through well-

Rondi had been adopted in January 1991 by Elton Lambert and Verta Lee Lambert. Elton Lambert appeared at this hearing and denied this adoption but presented a court order (Exhibit "G-16") appointing Verta Lee Lambert and himself as guardians of Rondi.

reasoned opinions, two different magistrate judges have refused to make such an appointment.

Now, this Court *sua sponte* must reconsider such an appointment to determine: (1) whether under the circumstances of this *in rem* forfeiture action it is necessary to appoint some type of legal representative for an infant before a default judgment may be taken against his interest in the forfeitable property; and (2) whether in this same action such an appointment is necessary before a judgment of any kind may be taken against the interest of that infant in the forfeitable property. This Court agrees with the magistrate judges and finds that such an appointment is not necessary. Both of their opinions, which have been made exhibits to this hearing (Exhibit "A" to Exhibit 7 and Exhibit 13), are incorporated herein by reference.

In reaffirming these rulings, the Court must also point out that Federal Rules of Civil Procedure Rule 55(b)(2) provides that ". . . no judgment by default shall be entered against an infant . . . unless represented in the action by a . . . [personal representative] who has appeared in the action" and Federal Rules of Civil Procedure Rule 17(c) requires the Court to ". . . appoint a guardian ad litem for an infant . . . not otherwise represented in the action or [to] . . . make such other order as it deems proper for the protection of the infant. . . ." For the reasons hereinafter stated in the "Default Judgment of Forfeiture" part of this opinion, the Court deems it unnecessary to appoint any personal representative for Rule 55(b)(2) purposes.

■ As to a Rule 17(c) *guardian ad litem* appointment, which would be required before any kind of judgment—default, on the merits, summary or other—is entered, any such appointment is discretionary with the Court. However, in *Roberts v. Ohio Casualty Ins. Co.*, 256 F.2d 35, 39 (5th Cir.1958), a judgment against minors was set aside because "no thought was given to the appointment of a *guardian ad litem* until after judgment was rendered below." *Id.* The Court stated:

Rule 17(c) does not make the appointment of a guardian ad litem mandatory. If the court feels that the infant's interests are otherwise adequately represented and protected, a guardian ad litem need not be appointed. [authority omitted]. But the rule does not mean that a trial judge may ignore or overlook such a fundamental requirement for the protection of infants. We spell out the rule to mean: (1) as a matter of proper procedure, the court should usually appoint a guardian ad litem; (2) but the Court may, after weighing all the circumstances, issue such order as will protect the minor in lieu of appointment of a guardian ad litem; and (3) may even decide that such appointment is unnecessary, though only after the Court has considered the matter and made a judicial determination that the infant is protected without a guardian.

*Id.*

■ In this case, since two magistrate judges have rendered well-reasoned opinions on the subject, it certainly cannot be said that no thought was given to the appointment of a guardian ad litem until after a judgment was rendered. Regardless, this Court queries whether or not Rule 17(c) even applies to the infants here. The Court notes that Rule 17 is located under Part IV of the Federal Rules of Civil Procedure which is entitled, "Parties" and that Rule 17 itself is entitled, "Parties Plaintiff and Defendant: Capacity." In its proper context, the appointment of a Rule 17(c) *guardian ad litem* would appear to apply only to infants who are parties. If the technical definition of the word "party" refers to one by or against whom a legal suit is brought and all others who may be affected are persons interested but not parties, then the infants here are not parties and the Rule 17(c) appointment provision would not apply. See *Golatte v. Mathews*, 394 F.Supp. 1203, 1207 n. 5 (D.C.Ala.1975) (defining "party.")

Even should the infants here be classified as "parties," the Court still considers the appointment of a *guardian ad litem* for the infants named herein to be unnecessary in that whatever interests the infants may have in defendant property can be and has been adequately protected without the appointment of a *guardian ad litem*.

First, the United States Attorney sought protection for the presumed interests when he, on two occasions, requested the appointment of a *guardian ad litem.* Next, both United States Magistrate Judges Britt Singletary and John M. Roper, in considering whether to appoint a *guardian ad litem,* did not feel that either of the three infants here had standing to assert a claim.

 For one thing, under the "relation back" doctrine of 21 U.S.C. § 881(h),[3] the Magistrate Judges, in essence, found that the infants, as heirs of the decedent Wahl, had no interest in defendant property to protect. They had only an expectation of an interest which had been terminated when Wahl committed the criminal acts in 1987 that caused defendant property at that time to be forfeited to the Government. When Wahl died on February 17, 1990, he no longer had an interest in defendant property to transfer, whether by deed, will, intestate succession or otherwise. Further, any such attempted transfer would be subject to the ownership interest of the United States. *United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890); *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *Case of One 1985 Nissan, 300ZX, VIN: JN1C214SFX069854,* 889 F.2d 1317, 1321 (4th Cir.1989); *In re Metmor Financial, Inc.,* 819 F.2d 446 (4th Cir.1987); *United States v. 6109 Grubb Road,* 708 F.Supp. 698 (W.D.Pa.1989), vacated on other grounds 886 F.2d 618, 620 (3rd Cir.1989); *Cf. Eggleston v. Colorado,* 873 F.2d 242, 247–248 (10th Cir.1989), *cert. denied sub nom., Colorado Dep't. of Revenue v. United States,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990). Nor does acquisition of a claimed ownership interest through heirship from the errant owner, subsequent to the act giving rise to the forfeiture, qualify the innocent heir, even an infant heir, for use of the "innocent owner" defense. 21 U.S.C. §§ 881(a)(6) and 881(a)(7) both have provisions excepting from forfeiture any property sought to be forfeited ". . . by reason of any act or omission established by [the] . . . owner to have been committed or omitted without [his] . . . knowledge or consent. . . ." When viewed with 21 U.S.C. § 881(h), *supra,* the "innocent owner's" interest must be vested prior to the date of the act that gives rise to the forfeiture, i.e., the date the Government's title accrues. Though innocent, the infants here still will have acquired no interests in the property that has been forfeited prior to the date that their ownership interests through heirship accrued.[4] Therefore, they have no standing in this case. *U.S.A. v. One Parcel of Property, Located at RR 2, Independence, Buchanan County, Iowa,* 959 F.2d 101 (8th Cir.1992); *Case of One 1985 Nissan, 300ZX, VIN: JN1C214SFX069854, supra* at 1320–1321; *United States v. One Rural Lot,* 739 F.Supp. 74, 78 (D.P.R.1990); *6109 Grubb Road, supra; United States v. Real Property In South Portland, Maine,* 760 F.Supp. 7, 8 (D.Me.1991); and *Cf. United States v. 127 Shares of Stock in Paradigm Mfg., Inc.,* 758 F.Supp. 581, 583 (E.D.Cal. 1990). Accordingly, since the three infants in this case had no interest in defendant property to protect, the appointment of a guardian was unnecessary.

Magistrate Judge Roper did go one step farther than Magistrate Judge Singletary, however. He analyzed the situations of each of the infants involved.

 In considering the circumstances pertaining to Rondi, he found that infant to be residing at all pertinent times with his paternal grandparents and due process to have been afforded him by forwarding notice of the forfeiture proceeding to them.[5] Based

---

**3.** 21 U.S.C. § 881(h) provides that "[title to defendant property] shall vest in the United States upon commission of the act giving rise to the forfeiture. . . ."

**4.** A distinction is made, however, if the innocent owner is a bona fide purchaser for value—someone who has acquired their interest by arm's-length purchase or loan—and someone who acquires their interest through inheritance or gift. In the former instance (if a bona fide purchaser for value), the "relation back" doctrine does not apply. In the latter, inheritance or gift, it does.

**5.** Federal Rules of Civil Procedure Rule 4(d)(2) authorizes service of summons and complaint upon an infant to be in the manner prescribed by the law of the State in which service is made. Mississippi Rules of Civil Procedure Rule 4(d)(2)(A) authorizes service upon an unmarried infant by serving the infant's mother, father, le-

on such, the grandparents, who later were appointed Rondi's guardians, sought legal counsel on Rondi's behalf and satisfied themselves that Rondi had no interest in defendant property. Apparently, the magistrate judge felt this to be adequate to protect the interest of that infant. This Court agrees and so finds.[6]

▪ As to the infants, April and Jeremy, Magistrate Judge Roper considered their situations together and found that they were not children of Wahl and were not sired by him. Obviously, they were not his heirs; could not have any interest in the property; and, therefore, had no standing in this matter. Even with this finding, the magistrate judge included a provision that he considered, and this Court considers, adequate to protect the interests of those infants. He required the United States Attorney to forward notice of this forfeiture proceeding to their natural mother, Susan, the adult person with whom those infants reside, giving her time to file a claim and answer on their behalf. Such was forwarded and received by her on March 11, 1992. The time for filing the claim expired on March 25, 1992, and she has chosen to file nothing on their behalves. Who better than she knows whether or not those infants are heirs of Wahl so as to even have an expectation of an interest in defendant property? Who better than she would come forward to protect their interests if she thought they had any?

Accordingly, based upon the foregoing findings and the findings of the two magistrate judges in their respective opinions—the order of Magistrate Judge Singletary dated September 20, 1990, and the Order Denying Motion for Reconsideration of Magistrate Judge Roper dated March 9, 1992—this Court finds that the said order of Magistrate Judge Roper adequately protected the interests of the infants in this case; that their interests have been adequately protected by the procedures required in this case; and that it is not necessary to appoint a *guardian ad litem* to protect their interests in that

such interests, if any, have been protected without such an appointment being made. Therefore, a default judgment of forfeiture, judgment on the merits or summary judgment against the interests of the said infants may be considered and granted without the appointment of a Rule 17(c) *guardian ad litem* on their behalves.

### DEFAULT JUDGMENT OF FORFEITURE

As shown hereinafter, default judgment of forfeiture is available herein against defendant property and the interests of all prospective claimants therein, including the infants. The findings that support such a conclusion follows.

A Verified Complaint for Forfeiture was filed in this matter on February 9, 1990. The complaint alleges that the defendant property, described above, was used to facilitate a violation of Title 21, *United States Code,* punishable by more than one (1) year's imprisonment, and also constitutes ultimate proceeds traceable to transactions violative of Title 21, Chapter 13, Subchapter I, *United States Code.* Therefore, it is subject to forfeiture and has been forfeited to the United States pursuant to 21 U.S.C. §§ 881(a)(6), (a)(7) and 881(h). Further, Parcel No. 2 was purchased with cashier's checks structured in such a way as to avoid the reporting requirements of 31 U.S.C. § 5313, as implemented by 31 C.F.R. § 103.22 and, therefore, violating 31 U.S.C. § 5324. That parcel is subject to forfeiture and has been forfeited pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(f).

Pursuant to a warrant for arrest of property issued by the Court on February 9, 1990, the defendant property was seized by the United States Marshal on February 10, 1990. Thereafter, notice of action and arrest was published in the *Clarion–Ledger,* a newspaper having general circulation in this district, on March 14, 15, 16, 21, 22 and 23, 1990. That notice was directed to any and all persons claiming an interest in the defendant property; and, as provided by Rule C(6) of

---

gal guardian, or the individual having care of such infant or with whom he lives.

6. Also, Elton Lambert, one of the guardians, made an appearance before the Court at this hearing and had previously met and conferred with the Assistant United States Attorney.

Supplemental Rules for Certain Admiralty and Maritime Claims, it notified all prospective claimants that any claim to the defendant property had to be filed with the Clerk of Court within ten (10) days after publication and that an answer to the complaint had to be filed within twenty (20) days after filing the claim.

On March 23, 1990, copies of the Notice of Action and Arrest, the Complaint for Forfeiture, the Warrant of Arrest, Lis Pendens Notice and Notice of Levy and the newspaper clipping were mailed certified, return receipt requested, to Susan Wahl, Rt. 3, Box 636, Pass Christian, Mississippi 39571; to Susan Wahl c/o Gail Nicholson, Esquire, P.O. Box 162, Gulfport, Mississippi 39502; and to Rondi Eugene Wahl c/o Verta Lee Lambert, 10288 Edwin Ladner Road, Pass Christian, Mississippi 39571. The documents addressed to Susan Wahl were returned unclaimed; however, her attorney, Gail Nicholson, received the documents on March 26, 1990. The documents addressed to Rondi were received on March 24, 1990.

The time for filing a claim with the Clerk expired no later than April 6, 1990. On April 2, 1990, Susan filed documents entitled "Claim", and "Answer to Complaint for Forfeiture and Demand for Jury Trial." No claims or answers were or have been filed, however, on behalf Rondi or any other person.

On April 12, 1990, the Government filed a motion seeking to have a *guardian ad litem* appointed for the three infants. By order of September 20, 1990, the Court denied this relief. On April 26, 1991, the Government filed a motion for reconsideration of this denial.

On February 26, 1992, a document entitled "Order Authorizing Withdrawal of Claim and Answer" was approved and signed by Donald M. Waits, Assistant U.S. Attorney, and Gail Nicholson, Esquire, for her client, Susan. That order was entered by Magistrate Judge Roper that same date. That document approved the withdrawal of the claim and answer of Susan and, further, allowed the Government to proceed to default judgment, without further notice, against the interest of Susan in and to defendant property.

On March 9, 1992, an order denying the relief sought by the motion for reconsideration of the appointment of a *guardian ad litem* was entered by Magistrate Judge Roper. This order also provided notice to Susan on behalf her minor children, April and Jeremy, of the pendency of the action against defendant property and the time within which she had to file a claim and answer on their behalves. A copy of this order was mailed, certified mail, return receipt requested, on March 10, 1992, to Susan on behalf these minors. Along with a copy of this order, a transmittal letter was sent, advising that Susan, on behalf her children, would have ten (10) days from receipt of the letter to file a claim, and twenty (20) days thereafter to file an answer. This was received by a Susan on March 11, 1992. The time for filing a claim expired March 25, 1992. No other claims and/or answers have been filed. Accordingly, total default has been made by Susan, Rondi, April, Jeremy and all other persons or entities having or claiming an interest in the defendant property; and the Government is entitled to a default judgment of forfeiture against defendant property including the interests of Susan, Rondi, April, Jeremy and all other persons or entities having or claiming an interest in and to defendant property.

■ This finding is made, however, with the Court being fully aware of Federal Rules of Civil Procedure Rule 55(b)(2) which provides that no default judgment "... shall be entered against an infant ... unless represented in this action by a [personal representative] who has appeared herein." As aforesaid, the guardian, Elton Lambert, has appeared at this hearing on behalf Rondi [7]; but no such personal representative has appeared at all on behalf April and Jeremy. Nevertheless, the Court feels that default judgment would still be proper here because this is an *in rem* action in which the default

---

**7.** The requirement of Federal Rules of Civil Procedure Rule 55(b)(2) should now be satisfied as to Rondi.

is not "entered against the infant" but is entered against the property and against the infants' interests therein. Technically, the three infants are not parties to this action. They were afforded notice of this forfeiture action under the rather bizarre circumstances of this case because, as found by Magistrate Judge Roper, they had an "expectation of interest" as opposed to a real interest in defendant property which had been terminated by the acts of Wahl in 1987. For that reason a default judgment of forfeiture is given here against the interests of those infants in and to defendant property without the appointment of a personal representative on their behalves.

### JUDGMENT ON THE MERITS

█ Even should a default judgment of forfeiture be unavailable against the interests of the said infants, a judgment based upon an evidentiary hearing is still available. In this regard and in addition to the proceeding pertaining to the default judgment of forfeiture, the Court conducted a bench trial[8] on the merits of this case. This procedure was utilized to further afford the infants an opportunity to produce evidence of their ownership interests in defendant property and of any defenses they may have to the forfeiture. It was conducted without the appointment of a *guardian ad litem* for the reasons stated above. However, under direction from the Court, notice of the date, time and place of the trial was forwarded and received by the paternal grandparents on behalf Rondi and Susan on behalf April and Jeremy. Such was received by those adults on September 16, 1992, thirteen days prior to this trial. Still, no appearance at the trial or otherwise was made on behalf April or Jeremy and, as aforesaid, Lambert and Benz, appeared at this hearing on behalf Rondi. The case pro-

ceeded to trial without the presence of April or Jeremy or anyone representing them and with the consent and presence of the aforesaid parties representing the interests of Rondi. The United States Attorney presented sixteen exhibits which included the following: Declaration of Donald M. Waits Supporting Dispositive Motion (Exhibit "7"); Copy of Deed to Parcel No. 1 (Exhibit "9"); Copy of Deed to Parcel No. 2 (Exhibit "10"); Declaration of Regina S. Dimitry[9] (Exhibit "11"); Sale Closing Statement, Documents Parcel No. 2 (Exhibit "12"); Declaration of Donald M. Waits Supporting Motion for Reconsideration (Exhibit "14"); and Declaration of José A. Delgado[10] (Exhibit "15").

█ These exhibits, primarily the Dimitry and Delgado declarations, provide the Court with enough factual details of the acquisition and use of defendant property[11] for the Court to determine that it has been forfeited to the Government pursuant to 21 U.S.C. § 881(h) and 18 U.S.C. § 981(f). This evidence shows that on parcel no. 1, Wahl constructed and paid cash for a home valued at approximately $100,000. Wahl's income was never of sufficient amount to accumulate funds to make that kind of cash outlay. Further, the evidence shows that the home was used as a place where marijuana and proceeds from the sale thereof were stored and maintained; and transactions pertaining to controlled substances, primarily marijuana, were planned and conducted there. Small amounts of marijuana and cocaine were kept there for personal use by Wahl and Susan. As to parcel no. 2, Dimitry's declaration reveals that it was purchased by Wahl and Susan for $40,000 that constituted proceeds derived from illegal marijuana transactions. Further, in an attempt to hide or launder that money, Wahl divided currency totaling

---

8. Such a procedure is ordinarily used in lieu of default proceedings in cases where infants or incompetents are involved and is even the authorized procedure under Mississippi Rules of Civil Procedure Rule 55(e).

9. Dimitry is a Special Agent for the Internal Revenue Service, the agent who investigated the money laundering or structuring segment of this matter.

10. Delgado is a Special Agent for the Drug Enforcement Administration, Department of Jus-

tice, the agent who investigated the Title 21 segment of this case.

11. All of the foregoing exhibits were also considered by the Court when making its findings pertaining to the ownership and record title of defendant property, the intestate death of Wahl, his heirship, the status of the three infants and other matters upon which this Court has based its General Findings above.

$40,000, in increments of $10,000 or less, among six different people and requested that they obtain cashier's checks from a financial institute made payable to Wahl. They did so and as he instructed, returned each cashier's check to Wahl. Wahl used these six cashier's checks to purchase parcel no. 2 from the seller, thereby avoiding the reporting requirements of 31 U.S.C. § 5313 and violating 31 U.S.C. § 5324.[12]

The foregoing facts are unrefuted and they show from a preponderance of the evidence that defendant property constitutes proceeds traceable to an exchange of a thing of value for a controlled substance in violation of Title 21, *United States Code;* is real property used or intended to be used to commit, or facilitate a commission of, a violation of Subchapter I, Chapter 13, Title 21, *United States Code;* and that parcel no. 2 is real property involved in a transaction or attempted transaction in violation of 31 U.S.C. § 5324 or is real property traceable to such property. Therefore, defendant property, including the interests of the said infants, has been forfeited to the Government pursuant to 21 U.S.C. §§ 881a(6), 881a(7), 881(h) and 18 U.S.C. §§ 981(a)(1)(A) and 981(f).

### SUMMARY JUDGMENT

The Court, feeling that this matter has been adequately resolved without considering the motion for summary judgment, makes no finding relative to same. This is not a finding, however, that such relief is not available but only that it is not necessary since a default judgment and judgment on the merits have been given.

The United States Attorney shall have ten (10) days to submit a judgment of forfeiture to the Court in accordance with and incorporating by reference this opinion.

SO ORDERED.

---

**12.** 31 U.S.C. § 5313, as implemented by 31 C.F.R. § 103.22, requires a domestic financial institution to file a Currency Transaction Report on all cash transactions exceeding $10,000. It is a criminal violation under 31 U.S.C. § 5324 for any person to structure a transaction to avoid this reporting requirement. 18 U.S.C. § 981(a)(1)(A) forfeits to the Government any property involved in a transaction in violation of 31 U.S.C. § 5324 or any property traceable to that property.