UNITED STATES of America,
Plaintiff,

v.

4323 BELLWOOD CIRCLE, ATLANTA, GEORGIA 30349 a/k/a 5375 Hennessy Circle, Atlanta, Georgia 30349 and All Buildings and Appurtenances Thereon, Defendant.

Civil Action No. 1:09–CV–1916–BBM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 19, 2010.

Mary Frances Blazek Kruger, U.S. Attorney's Office, Atlanta, GA, for Plaintiff.

Richard A. Rice, Jr., The Rice Law Firm, LLC, Atlanta, GA, for Defendant.

## ORDER

BEVERLY B. MARTIN, District Judge.

This matter is before the court on the Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") [Doc. No. 8], filed by Claimant Larkeit L. Knowlin ("Mr. Knowlin").

## I. *Factual and Procedural Background* [1]

On a motion to dismiss, the court accepts as true all factual allegations set out in the plaintiff's complaint. *See Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir.2002). On September 10, 2008, Mr. Knowlin, doing business as 377 Entertainment/Backwoods Records LLC, opened a bank account ending in— 0468 with JP Morgan Chase Bank (the "JPMC Account"). (Compl. ¶ 9.) From October 31, 2008 through May 22, 2009, at least forty-eight substantial cash deposits were made into this account, in amounts that never individually exceeded $10,000. (*Id.* ¶ 10.) Five times during this period, Mr. Knowlin made more than one $9,000 cash deposit on a single day. (*Id.*) Additionally, on fifteen occasions, Mr. Knowlin made deposits on consecutive days that, again, were individually under $10,000, but together exceeded $10,000. (*Id.*) The sum total of these cash deposits was approximately $400,840. (*Id.*) In March 2009, JP Morgan Chase sent Mr. Knowlin a letter, informing him that federal law prohibits structuring of transactions so as to cause a domestic financial institution to fail to file a Currency Transaction Report ("CTR") for cash deposits in excess of $10,000. (*Id.* ¶ 11.)

On July 7, 2009, a Magistrate Judge found that there was probable cause to believe that the JPMC Account was subject to seizure and issued a warrant to seize all funds in the account. (*Id.* ¶ 13.) The Internal Revenue Service ("IRS") seized these funds on July 8. (*Id.* ¶ 14.). During a consensual interview the following day, Mr. Knowlin informed an IRS Special Agent that on June 25, 2009, after JP Morgan Chase Bank sent its letter, Mr. Knowlin used funds from the JPMC Account to purchase a house in Fulton County for $330,000. (*Id.* ¶¶ 11, 15–18.) This house is situated on the parcel located at 4323 Bellwood Circle, also known as 5375 Hennessy Circle, Atlanta, Georgia ("4323 Bellwood Circle"). (*Id.* ¶ 19.)

On July 16, 2009, Plaintiff United States of America (the "Government") filed its Complaint for Forfeiture [Doc. No. 1]. The Complaint alleges that Mr. Knowlin made structured deposits into the JPMC Account with the intention of avoiding the CTR requirement of 31 U.S.C. § 5313. Pursuant to 31 U.S.C. § 5317, it seeks forfeiture of 4323 Bellwood Circle including all buildings and appurtenances on the property (the "Defendant Property") as traceable to a violation of 31 U.S.C. § 5324, or a conspiracy to violate this provision. (*Id.* ¶ 3.) The Government requests relief in the form of (1) forfeiture of the Defendant Property to the United States, (2) costs of this action, and (3) other relief as the court deems just and proper. (*Id.* at 8.)

On September 1, 2009, Mr. Knowlin filed a Verified Claim [Doc. No. 6], pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). On September 18, 2009, Mr. Knowlin filed the Motion to Dismiss presently before the court, claiming that the Government's Complaint fails to state a

---

1. The facts are recounted from the Complaint and do not constitute findings of fact by the court.

claim upon which relief may be granted. The Government filed its response on November 24, 2009 [Doc. No. 12], to which Mr. Knowlin has elected not to reply.

## II. *Legal Standard*

▬▬▬ Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. To withstand a motion to dismiss, a complaint must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court construes the complaint in the plaintiff's favor, and accepts the facts it alleges as true. *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir.2006). However, "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, as "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a wholly conclusory statement of a claim cannot, without more, survive a motion to dismiss. *See Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1303 (11th Cir.2007) (citing *Twombly*, 550 U.S. at 561–62, 127 S.Ct. 1955).

In this matter, the traditional pleading rules are modified by the Supplemental Rules, which, along with the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202 (codified primarily at 18 U.S.C. § 983), set out requirements specific to civil "forfeiture action[s] in rem arising from a federal statute." Supp. R. G(1). Courts are to evaluate the sufficiency of a complaint under standards established by Supplemental Rule G(2). *Id.* G(8)(b)(ii). Accordingly, the Government's Complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* G(2)(f).[2]

---

**2.** The 2006 Amendments to the Supplemental Rules adopted the Fourth Circuit's standard for determining the sufficiency of a civil forfeiture complaint. *See United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir.2002) (holding that the complaint need only allege "sufficient facts to support a reasonable belief that the property is subject to forfeiture"); *see also* Supp. R.G advisory committee note on 2006 adoption.

"Before Congress enacted [CAFRA], the government's trial burden was to show probable cause for forfeiture; the burden of proof then shifted to the claimant. Now, after CAFRA's enactment, the government must prove by a preponderance of the evidence that the property is subject to forfeiture." *Mondragon*, 313 F.3d at 865 (citing 18 U.S.C. § 983(c)(1); other citations omitted). The court notes, however, that in *United States v. $38,000.00 Dollars in United States Currency*, 816 F.2d 1538 (11th Cir.1987), the Eleventh Circuit held:

[A] section 881(a) forfeiture complaint must allege sufficient facts to provide a reason-

able belief that the property is subject to forfeiture: in particular, that the government has probable cause to believe that a substantial connection exists between the property to be forfeited and the [unlawful activity].

*Id.* at 1548. The Eleventh Circuit set out this probable cause standard before CAFRA modified the burden of proof at trial, as discussed above. While the Eleventh Circuit has not expressly addressed whether the enactment of CAFRA superseded *$38,000.00 in United States Currency*, the Fourth Circuit has suggested as much. As the Fourth Circuit observed of *$38,000.00 in United States Currency*, the Eleventh Circuit began its analysis by reviewing the statutory pleading requirement and as such, " 'reasonable belief that probable cause can be shown at trial' was apparently keyed to the government's burden of proof at the time (prior to 2000) the[ ] case[ ] w[as] decided." *Mondragon*, 313 F.3d at 865 (listing *$38,000.00 in United States Currency* among the pre-CAFRA cases likely affected by the statutory modification). It does not,

"Structuring" occurs when individuals arrange their financial transactions to avoid having them reported to the Government. Section 5313 of Title 31 of the *United States Code* and related regulations require financial institutions to report to the IRS any deposits that exceed $10,000. *See* 31 U.S.C. § 5313(a); 31 C.F.R. § 103.22(b)(1). Section 5324, in turn, forbids individuals from "attempt[ing] to cause a domestic financial institution to fail to file a report required under section 5313(a)" and criminalizes "structur[ing] ... or attempt[ing] to structure ... any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324(a)(1), (3).

Pursuant to § 5317, the Government may file a civil forfeiture action to seize certain property related to a structuring violation:

> Any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property *traceable to any such violation* or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

*Id.* § 5317(c)(2) (emphasis added). Furthermore, case law interpreting the civil forfeiture provision of 18 U.S.C. § 981(a)(1)[3] and the nearly identical criminal forfeiture provision of 18 U.S.C. § 982(a)(1)[4] can afford some guidance when evaluating the "involved in" and "traceable to" language of § 5317. *See United States v. Seher,* 562 F.3d 1344, 1369 (11th Cir.2009) (holding that because § 5317(c)(1)(A)[5] and 18 U.S.C. § 982(a)(1) "essentially mirror each other, it seems incongruous to interpret those provisions as covering different arrays of property," adding that there is "no policy basis for distinguishing between the two [statutes]"); *see also United States v. McGauley,* 279 F.3d 62, 76 n. 13 (1st Cir.2002).[6]

therefore, offend Eleventh Circuit precedent to consider the Complaint currently before this court in light of the fact that now the Government's presentation of evidence at trial will be evaluated according to a preponderance of the evidence standard, and not probable cause. *See United States v. Seher,* 562 F.3d 1344, 1370 n. 27 (11th Cir.2009) (remanding a forfeiture order and instructing the district court to "address whether forfeiture is supported by a preponderance of the evidence"). In any event, whether considered in light of a probable cause or preponderance of the evidence standard, the Government's pleadings here are sufficient.

3. "The following property is subject to forfeiture to the United States: (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A).

4. "The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall

order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1).

5. The language of 31 U.S.C. § 5317(c)(2) differs only slightly from that of 31 U.S.C. § 5317(c)(1)(A). In relevant part, § 5317(c)(2) allows the Government to seize "property traceable to any such [statutory] violation or conspiracy." 31 U.S.C. § 5317(c)(2). Section 5317(c)(1)(A), in turn, authorizes criminal forfeiture of "property, real or personal, involved in the offense and any property traceable thereto." *Id.* § 5317(c)(1)(A).

6. Section 5317(c)(2) authorizes civil seizure "in accordance with the *procedures* governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A)." 31 U.S.C. § 5317(c)(2) (emphasis added). However, § 5317(c)'s substantive language may be distinguished from that of both 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 982(a)(1). A plain language reading of the latter two sections indicates that they enable the Govern-

### III. *Analysis*

Mr. Knowlin argues that the Government's only basis for its forfeiture action is either that the Defendant Property is a substitute asset, as defined by 18 U.S.C. § 984, or that the parcel is "traceable to" a statutory violation. (Mot. to Dismiss 5 ("Since the residence was not involved in the alleged structuring, the residence is subject to seizure and forfeiture only if it constitute[s] a substitute asset or if it is traceable to the alleged structuring.").) Neither basis, contends Mr. Knowlin, is legally sufficient to support the Government's Complaint for Forfeiture.

### A. Inapplicability of 18 U.S.C. § 984

Mr. Knowlin argues that because "[t]he residence clearly is not 'identical property' and is not in the 'same place or account' as the JPMC Account," § 984 is inapplicable in this case. (*Id.* at 6 (quoting 18 U.S.C. § 984(a)(2)).) The Government responds that Mr. Knowlin's characterization of its claims "categorically misconstrue[s] the nature of this forfeiture by confusing distinct concepts of forfeiture law." (Pl.'s Resp. in Opp'n to Claimant's Mot. to Dismiss the Forfeiture Compl. 12 [hereinafter Opp'n].) The Government argues that § 984 is "merely an evidentiary rule that relaxes the usual tracing requirement at the time of trial." (*Id.* at 11–12.) As such, "[t]he applicability of Section 984 should

have no bearing on a motion to dismiss." (*Id.* at 13 (citation omitted).)

Section 984 facilitates Government efforts to seek forfeiture of fungible property "deposited in an account in a financial institution," by freeing the Government from the burden of "identify[ing] the specific property involved in the offense that is the basis for the forfeiture." 18 U.S.C. § 984(a)(1)(A). However, the Government has not yet sought the assistance of § 984's relaxed standard to make its case here. In fact, it agrees with Mr. Knowlin that, at least at this stage in the proceedings, § 984 is inapplicable.

Because Mr. Knowlin's assertion of § 984's inapplicability is superfluous at this stage and because, as is discussed below, the court finds that the Defendant Property is properly traceable to a statutory violation, this Order need not address whether § 984 may, at some point, prove applicable to the facts of this case.

### B. Defendant Property Can Be Traced to a Statutory Violation

■ Mr. Knowlin argues that the Government's Complaint relies upon a "strained application of the traceable assets theory of forfeiture" and, as such, its claims are insufficient as a matter of law. (Mot. to Dismiss 9.) The Government responds that, to the contrary, "[i]t is settled law that real or personal property purchased with funds that would be subject to

---

ment to seize property that is "traceable to such *property* [ ]" that is "involved in" a statutory violation, rather than property that is traceable to the *statutory violation* itself, as stated in § 5317(c)(2). *Compare* 18 U.S.C. § 982(a)(1) (emphasis added), *and* 18 U.S.C. § 981(a)(1)(A), with 31 U.S.C. § 5317(c)(2). Neither party has made any effort to distinguish how, if at all, the difference in the "traceable to" language affects the provisions' scope; how this potential difference should affect the court's analysis; or whether the *Seher* holding quoted above is constrained to the provisions' "limited to" language. In-

stead, both parties rely upon case law that applies § 981 in interpreting § 5317. (*See, e.g.,* Pl.'s Resp. in Opp'n to Claimant's Mot. to Dismiss the Forfeiture Compl. 7.) In fact, Mr. Knowlin's Motion not only quotes the language of § 981 in its recitation of the legal standard, (*see* Mot. to Dismiss 5), its traceability argument turns solely upon a case that interprets the language of an older version of § 981, (*id.* at 7–9). In the absence of briefing on the issue, the court will follow the parties' lead and declines to deny Mr. Knowlin's Motion based upon distinctions in the provisions' "traceable to" statutory language.

forfeiture, is forfeitable as traceable property." (Opp'n 7.)

Neither party has cited to, nor has the court identified, binding precedent that deals with the precise question raised by Mr. Knowlin. *Cf. Seher*, 562 F.3d at 1369 (relying on a facilitation theory and forfeiting jewelry store inventory as property "involved in" a statutory violation where the inventory "made it easier for [the defendant] to launder money by giving potential buyers a large variety of jewelry options"). In fact, Mr. Knowlin's traceability argument rests entirely upon a single case, *United States v. Certain Accounts, Together with All Monies on Deposit Therein*, 795 F.Supp. 391 (S.D.Fla.1992). In *Certain Accounts,* the Government brought an action to compel forfeiture of "all monies on deposit in thirty-one bank accounts as funds involved in or traceable to money laundering, pursuant to 18 U.S.C.[ ] § 981." *Id.* at 392. The case arose out of the arrest of a man who attempted to assault a U.S. Customs Special Agent with a machine gun. Upon his arrest, officials discovered evidence that the suspect was engaged in an elaborate structuring scheme. Specifically, he had purchased, deposited, and mailed for deposit money orders of a significant total sum, but which were individually slightly less than the reporting threshold. *Id.* at 392–93. Of the thirty-one accounts, only four were primary or "direct recipient accounts," into which the money orders were deposited. *Id.* at 393. However, from these four primary accounts, checks were drawn and negotiated into twenty-seven other accounts, secondary or "indirect recipient accounts." *Id.* The Government sought forfeiture of the entire balance of each of the thirty-one accounts, direct and indirect alike.

Ruling on nine claimants' motions to dismiss, the court concluded that the Government had stated a claim as to the direct recipient accounts, but dismissed the claims seeking forfeiture of the secondary accounts. *Id.* at 397, 399. The court then afforded the Government leave to amend its complaint to allege additional facts that would give rise to a reasonable belief that the indirect recipient accounts were subject to forfeiture. *Id.* at 399. In arriving at its conclusion, the court held that to state a claim against the indirect accounts the Government "must allege facts other than a mere tracing of checks written against a suspect account." *Id.* at 398. In other words, it was insufficient merely to claim that the "taint" of the direct recipient accounts was communicated by checks drawn from them and that the deposit of these checks contaminated the entire balance of the secondary accounts. *See id.* at 397–98.

Despite Mr. Knowlin's attempts to analogize *Certain Accounts* to this case, it is distinguishable in many respects. In *Certain Accounts,* the Government sought to seize the entire balance of the indirect recipient accounts, even where the Government was able to calculate the exact proportion that was tainted. *See id.* at 393 (noting that the Government sought to seize the entire balance of one account, which was tainted by a single $1,500 check, approximately 3% of the account's total value). Unlike *Certain Accounts,* the Defendant Property in this case is singular and indivisible. Further, accepting as true all the facts alleged within the Complaint and making all inferences in the Government's favor, Mr. Knowlin is accused of unlawfully structuring deposits that totaled over $400,000 and, as such, he could have financed 100% of the purchase price of his $330,000 house with "tainted" funds. (*See* Compl. ¶¶ 10, 16.)

A related distinction pertains to *Certain Accounts's* focus on the far-reaching implications of forfeiting the indirect recipient

accounts. The court criticized the Government's position by emphasizing that its adoption would result in the forfeiture of assets of potentially innocent third parties, the holders of the secondary accounts. Because the complaint lacked "any facts concerning the balance of the account[s]," "[t]here exist[ed] a real possibility that unknowing and factually innocent account holders who ... received an allegedly tainted deposit [would] be deprived of the use of the funds." 795 F.Supp. at 395 (emphasis omitted). The Government had alleged insufficient facts to create an inference that the third-party account holders were even cognizant of the tainted nature of the primary accounts' checks. *See id.* at 398. Stated differently, the court noted that under the Government's theory "each direct account could contaminate any account that had dealings with it." *Id.* In turn, this would mean that if funds from any of the thirty-one accounts were used to pay a bill or to make a charitable donation, the accounts of the payee or donee would also be subject to forfeiture. *Id.* at 398 n. 12.

The concerns expressed by *Certain Accounts* are not nearly as pronounced in this case. First, Mr. Knowlin is not only the owner of the Defendant Property, he is also the individual who allegedly structured the JPMC Account's deposits, with which he financed the Defendant Property's purchase. (Compl. ¶¶ 10, 16–19.) Furthermore, unlike the funds of the indirect recipient bank accounts, the Defendant Property is real property that cannot be readily and repeatedly renegotiated to multiple parties. For this reason, this court is not compelled by *Certain Accounts's* anxiety that, "[l]ike a contagious disease," the Defendant Property could "conceivably pass on the infection to other accounts, and so forth *ad infinitum.*" 795 F.Supp. at 398. Unlike *Certain Accounts*, there is limited risk in this case that an "unknowing and factually innocent" third

party will be subject to inconveniences and hardships because of this suit. *Id.* at 395.

More closely analogous to this case is *United States v. Hosseini*, 504 F.Supp.2d 376 (N.D.Ill.2007), in which the Government brought a forfeiture action after a jury convicted two criminal defendants of, among other things, conspiring to engage in racketeering activity and unlawful structuring. *Id.* at 378. In that case, the court held that § 5317(c)(1) authorized the Government to seize a parcel of real property because it had "satisfactorily proved [that] the real estate was in fact purchased with funds structured into [a defendant's] bank accounts." *Id.* at 383. Specifically, the court held that the parcel was subject to forfeiture because it was "assertedly traceable to [a defendant's] structuring offenses under Section 5317(c)(1)(A)." *Id.* Also persuasive is the logic applied by *Hosseini* in refusing to extend § 5317's reach to $10 million of the defendants' personal assets. The court took pains to lay out the significant sums that the two defendants attempted to conceal by violating § 5324's reporting requirements. However, the Government's evidence only supported the proposition that the two men laundered and structured millions of dollars to fill the bank accounts of three used car dealerships that they owned. *Id.* at 384–85. The court refused to permit the Government to seize the defendants' *personal* funds, however, because "[n]ot a scintilla of proof [was] proffered to show the extent to which any of the money involved then flowed out of the Dealerships into [the defendants' own] hands." *Id.* at 385 (expressing a concern that failure to link these personal funds to the statutory violation might lead to double recovery by the Government).

In this case, as in *Hosseini*, the Government brings a "civil forfeiture action ... filed against the Defendant Property pursuant to 31 U.S.C. § 5317, as property

*traceable to* a violation of 31 U.S.C. § 5324." (Compl. ¶ 3 (emphasis added).) The Complaint sets out, in detail, the nature of the deposits that constitute the factual basis for the statutory violation. (*See id.* ¶ 10.) Then, in contrast to the Government's allegations in *Hosseini* regarding the defendants' personal accounts, with great factual specificity this Complaint links the unlawful structuring of funds to the purchase of the Defendant Property. The Government alleges that "Larkeit Knowlin told the agents that he recently purchased a house in Fulton County for a price of $330,000," (*id.* ¶ 16); it confirms that this newly-acquired house is the Defendant Property, (*id.* ¶¶ 19–20 (referencing the exact address and even quoting from the Warranty Limited Deed)); and, closing the loop, it asserts that "Larkeit Knowlin stated he used funds from his business account, JP Morgan Chase account number x0468, to purchase the house in order ultimately [to] develop a recording studio," (*id.* ¶ 18).

Though no binding precedent is as directly on point as *Hosseini, United States v. Seher,* 562 F.3d 1344, is a useful guide. In *Seher,* the Eleventh Circuit held that § 5317's use of the term "involved in" permits courts to order forfeiture of property even where that property merely facilitated a violation of § 5324. *Id.* at 1369. Despite adopting this expansive interpretation of the statutory language, the Court vacated a portion of the forfeiture order that authorized seizure of a bank account, because there was "no evidence in the record ... linking [the claimant-corporation's] bank account to the reporting and laundering offenses." *Id.* at 1370. The Government had failed to even provide evidence of the account's existence or its name. *Id.* It had not, for instance, offered deposit slips or account statements, but

relied instead on general references and an "interconnectedness" with another corporation whose assets were properly subject to seizure. *Id.* Thus, the Government had not met its evidentiary burden of "t[ying] the [unreported] cash to ... the bank account." *Id.*

In *Seher,* the Eleventh Circuit explicitly disapproved of a narrow interpretation of § 5317, rejecting a proposed application that would have required the forfeited property to be "directly involved in the reporting offense." *Id.* at 1369. The Court concluded, "[t]hough property need not be used exclusively for illegal activities to be forfeitable, it 'must have more than an incidental or fortuitous connection to criminal activity.'" *Id.* at 1370 (quoting *United States v. Schifferli,* 895 F.2d 987, 990 (4th Cir.1990)). If proven at trial, the facts of the Complaint would certainly create "more than an incidental or fortuitous connection" between the Defendant Property and Mr. Knowlin's alleged structuring of cash deposits. *Id.* (citation and internal quotations omitted). Mr. Knowlin allegedly structured over $400,000 into the JPMC Account and, shortly after JP Morgan Chase sent him a letter warning of the federal prohibition on structuring, Mr. Knowlin used funds from this account to purchase the Defendant Property for $330,000. The court finds that the Government has "allege[d] sufficient facts to provide a reasonable belief that the property is subject to forfeiture"—in other words, that the Defendant Property is traceable to a violation of § 5324. *United States v. $38,000.00 Dollars in U.S. Currency,* 816 F.2d 1538, 1548 (11th Cir.1987); *see also United States v. Mondragon,* 313 F.3d 862, 865 (4th Cir.2002). The Government has, therefore, stated a claim for which relief may be granted. As such, Mr. Knowlin's Motion to Dismiss is DENIED.[7]

---

7. Courts of other jurisdictions have also sanctioned the forfeiture of real and personal property acquired with laundered or structured funds, concluding such property is ei-

## IV. Summary

For the foregoing reasons, the court DENIES Mr. Knowlin's Motion to Dismiss for Failure to State a Claim [Doc. No. 8].

ther traceable to or involved in a relevant statutory violation. *See, e.g., United States v. Varrone,* 554 F.3d 327, 329–30, 332–33 (2d Cir.2009) (noting that the district court "found that the assets identified [were] properly traceable to the crime, because [t]he Citibank account was used by Castello to conduct his check cashing business [in violation of § 5313 and § 5322(a)], and the Government has submitted more than sufficient evidence demonstrating that the funds in that account were used in construction of [the property,]" and rejecting the defendant's argument that § 5317(c)(1)(A) only authorizes forfeiture of the instrumentalities of a crime, but vacating judgment because the factual record was insufficiently developed to determine whether the forfeiture was constitutionally excessive (citations and internal quotations omitted)); *United States v. Myers,* 21 F.3d 826, 831 (8th Cir.1994) (asserting multiple grounds justifying forfeiture of defendant's farm including that, pursuant to 18 U.S.C. § 982(a)(1), property is "involved in" a laundering offense where the defendant "made substantial payments on the real estate contract and improvements on the property from [an account to which the laundered money had been transferred]"); *United States v. 10.10 Acres Located on Squires Road in Cheeks Twp., Orange County, N.C.,* 386 F.Supp.2d 613, 616

(M.D.N.C.2005) ("Real property is involved in a money laundering offense if laundered funds are used to make payments toward purchase of the property and to pay for improvements." (citation omitted)); *United States v. 42.5 Acres, More or Less, of Land & Personal Property, Located in First Property Judicial Dist. of Harrison County, Miss.,* 834 F.Supp. 912, 918, 921 (S.D.Miss.1992) (forfeiting Parcel No. 2 because it "was purchased with cashier's checks structured in such a way as to avoid the reporting requirements of 31 U.S.C. § 5313, as implemented by 31 C.F.R. § 103.22 and, therefore, violating 31 U.S.C. § 5324," and, as such, it is "real property involved in a transaction or attempted transaction in violation of 31 U.S.C. § 5324 or is real property traceable to such property"); *see also United States v. One Urban Lot Located at Road 143 K 36.1 Bauta Abajo Ward, Orocovis, P.R.,* 14 F.3d 45 (1st Cir.1994) (unpublished table decision) (affirming district court forfeiture of real property pursuant to 18 U.S.C. § 981(a)(1)(A) and § 881(a) where evidence supported the government's claim that the property was purchased "with proceeds traceable to [the claimant's] drug transactions for the purpose of laundering the money" and that the property once served "as a meeting place to discuss an illegal drug distribution scheme").